## LOUISVILLE AND SOUTHERN INDIANA TRACTION COMPANY *v.* MILLER.

[No. 11,604.  Filed February 5, 1924.  Rehearing denied May 14, 1924.  Transfer denied November 6, 1924.  Rehearing on petition to transfer denied January 7, 1925.]

1.  JUDGES.—*A special judge is not disqualified to try personal injury action by knowledge of physical condition of plaintiff at time of injury.*—A special judge is not disqualified to try an action for personal injuries merely because he knew something about the physical condition of the plaintiff at the time of the injury, and had been subpoenaed by plaintiff as a witness at a former term of court.   p. 348.

2.  JUDGES.—*Knowledge of disqualification of special judge at the time of his selection precludes subsequent objection to his serv-*

*ing.*—The applicant for a change of judge who knew of the disqualification of the judge selected to try his case and did not strike his name from the list of names submitted will not be allowed to object to his serving as special judge. p. 348.

3. NEW TRIAL.—*Trial judge may extend time for filing affidavits in opposition to motion for new trial.*—A trial judge has the right to extend the time for filing affidavits in opposition to a motion for a new trial, and the granting of such extension will be implied where the record is silent on the subject. p. 349.

4. NEW TRIAL.—*Trial court's decision on a motion for new trial on opposing affidavits must be accepted on appeal.*—Where there are affidavits for and against the motion for a new trial, a question of fact arises to be decided by the trial court, and its decision must be accepted on appeal. p. 350.

5. TRIAL.—*Repetition in instructions of amount of damages demanded by plaintiff not reversible error.*—The fact that the court, in giving its instructions, mentioned several times the amount of damages demanded by the plaintiff in his complaint would not constitute reversible error, especially in view of an instruction given at the request of the defendant to the effect that the fact that plaintiff had asked for damages in a certain sum should not influence the jury in determining whether he was entitled to any damages. p. 353.

6. TRIAL.—*Instruction as to passengers' right to recover for injuries sustained in alighting from a street car at a certain place held not to assume any fact in controversy.*—An instruction to the effect that where a passenger on a street car alighted at a place where the car was stopped for passengers to alight and was injured by the negligence of the carrier, such passenger, if free from fault, could recover damages for the injuries received, was not objectionable on the ground that it assumed that the passenger was injured at a street intersection where the car had stopped for passengers to alight and not, as the defendant claimed, at a switch which was not a place where passengers were received or discharged. p. 354.

7. TRIAL.—*Instruction that passenger on street car was entitled to recover for injuries resulting from defendant's negligence if plaintiff was "free from fault" too favorable for defendant.*—A street car company cannot object to an instruction that a passenger on a street car who sustained an injury while alighting from the car, resulting from the negligence of the carrier's employees, could, if "free from fault," recover damages for the injuries received, since it was more favorable to the company than it was entitled to, as a plaintiff may recover for a negligent injury unless the evidence shows that he was at fault. p. 354.

346    APPELLATE COURT OF INDIANA,

Louisville, etc., Traction Co. *v.* Miller—82 Ind. App. 344.

8. CARRIERS.—*Passenger suing for injuries received by reason of carrier's negligence not required to prove freedom from contributory negligence.*—A passenger suing a street railroad company for injuries sustained while alighting from a car was not required to prove that he was free from contributory negligence, as he would be entitled to recover unless the evidence showed that he was at fault. p. 354.

9. WITNESSES.—*Cross-examination is proper as to contradictory statements concerning the circumstances of an accidental injury to plaintiff.*—In an action against a street railroad company for personal injuries received by a passenger while alighting from a car, where the motorman testified as to the circumstances of the accident, he was properly cross-examined as to whether he had not subsequently made a statement to a certain person contradictory of his testimony as to how the accident happened. p. 354.

10. WITNESSES.—*Witness may be impeached by proof of statements contradictory of testimony.*—In an action for personal injuries received by a passenger while alighting from a street car, where the motorman testified as to the circumstances of the accident, and then on cross-examination, denied that he had subsequently made a statement to a certain person contradictory of his evidence, testimony of such person that the motorman did, in fact, make such statement was admissible to impeach the testimony of the motorman. p. 354.

From Clark Circuit Court; *John M. Paris,* Special Judge.

Action by Julian T. Miller against the Louisville and Southern Indiana Traction Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*George H. Voigt,* for appellant.
*Jonas G. Howard* and *Burdette C. Lutz,* for appellee.

McMAHAN, J.—Appellee filed his complaint in the Floyd Circuit Court alleging that he, while a passenger on one of appellant's street cars, was injured through appellant's negligence in suddenly starting the car as appellee was alighting therefrom. The venue was changed to the Clark Circuit Court and later, on appellant's application, there was a change of judge. The

NOVEMBER TERM, 1924.     347

Louisville, etc., Traction Co. *v.* Miller—82 Ind. App. 344.

regular judge submitted the names of three lawyers from which to select a special judge. Among the names so submitted was that of the judge of the Floyd Circuit Court, and after each of the parties had struck off one name, that of the Floyd Circuit Judge remained and he was appointed. A few days later, the special judge having assumed jurisdiction of the cause, appellant asked that he decline to try the cause and, in support of such request, filed an affidavit on information and belief that the special judge so appointed was acquainted with the physical condition of appellee at the time he was injured and had been subpoenaed at a former term of court as a witness for appellee, and that, if such judge had been called as a witness at such prior term, he would have testified as to the physical condition of appellee. The request was denied. The cause was then continued to a day certain in the next term, when there was a trial which resulted in a verdict and judgment in favor of appellee.

The errors assigned challenge the action of the special judge in overruling appellant's request that he decline to try the case and in overruling the motion for a new trial.

The specifications in the motion for a new trial relied on for a reversal are: (1) That appellant was prevented from having a fair trial on account of the special judge overruling appellant's request that he decline to try the cause; (2) that one of the jurors was guilty of such misconduct as to prevent appellant having a fair trial; (3) that appellant was prevented from having a fair trial because the court, in instructing the jury, first read the instructions tendered by appellant and followed the same by reading the instructions tendered by appellee and then those given by the court on its own motion; (4) that the court erred in giving certain in-

structions; (5) error in admitting certain evidence; and (6) that the damages assessed are excessive.

We see no error in the action of the special judge in denying appellant's request that he decline to try the cause. The simple fact that the trial judge may have known something about the physical condition of appellee at the time of his injury and that he may have been subpoenaed by appellee as a witness at a former term of court when the cause was set for trial did not render the special judge incompetent. The affidavit filed in support of this request is made on information and belief. It fails to disclose the source of the party's information or when such information was received. It appears that the cause had been set for trial at the April term of court, but for some undisclosed reason was not then tried. At the next term of court, a verified motion for change of judge was filed and the judge of the Floyd Circuit Court was selected to try the case. In so far as the record discloses, appellant, at the time of such selection and appointment, was as fully advised concerning the subpoenaing of the judge as a witness, as it was when the request was made asking that he decline to try the case. There is no claim made that such judge was present at the time appellee was injured or that he knew anything about the circumstances attending the accident or appellee's injury. This is not a case where the trial judge testified as a witness. Indeed there is no positive statement or showing that he was, as a matter of fact, subpoenaed or that he was possessed of any knowledge concerning any of the facts in controversy. If appellant at the time when the special judge was selected had any reason to believe that the party selected was for any reason disqualified to try the cause, he had an opportunity to strike his name from the list of names submitted.

One of the reasons assigned for a new trial is the

alleged fact that one of the jurors was guilty of misconduct in answering questions asked him regarding his competency to serve as a juror. In support of this contention, appellant filed the affidavits of its lawyers who were present and assisted in the empaneling of the jury. These four lawyers and an assistant each stated in his affidavit that the juror in question, when being examined as to his competency, was asked, both by the trial judge and by an attorney for appellant, whether he was a householder or freeholder and that, in answer thereto, stated that he was a legal voter, householder and freeholder of the county when, as a matter of fact, he was neither a freeholder nor householder of the county. Appellee filed the several affidavits of himself, of three lawyers who were present and represented him when the jury was empaneled and of five of the jurors who tried the cause, including the juror whose competency was being questioned. In each of these affidavits, the statements in the affidavits filed by appellant in support of the motion for a new trial were specifically denied.

Appellant insists that the affidavits filed by appellee in opposition to the motion for a new trial were not filed within the time fixed by the court and for that 3. reason cannot be given any consideration. The record shows that the verdict was returned March 10, 1922; that the motion for a new trial was filed in the clerk's office April 6, 1922, that being in vacation. On April 11, 1922, at an adjourned term of court, the motion for a new trial was presented to the court, and the court, after showing that the motion and affidavits in support thereof had been filed, gave appellee two weeks time in which to file counter affidavits. On April 25, 1922, that being the eighth day of the next term of court, appellee filed his counter affidavits heretofore referred to in the clerk's office. On May 5, 1922,

these counter-affidavits were filed in open court and the attention of the court called to the fact that the same had theretofore been filed in the clerk's office. On June 10, 1922, the motion for a new trial was overruled, to which ruling appellant excepted and filed its special bill of exceptions showing the overruling of said motion. This bill of exceptions, however, has been omitted from the transcript and we, therefore, do not know the contents of the same. When appellee filed his affidavits in opposition to the motion for a new trial, the court was in session, but it is conceded that the special judge before whom the matter was pending was not present. Appellant's contention is that these affidavits cannot be considered because they were not filed in open court within the time fixed by the court. This contention cannot prevail. The trial judge had the right to extend the time within which appellee could file such affidavits and the granting of such extension will be presumed. There was no statute requiring these affidavits to be filed within a certain time as is the case with motions for a new trial. These affidavits were on file when the court overruled the motion for a new trial.

Appellee insists that no question is presented in relation to the incompetency of the juror for the reason that the examination of the juror on his *voir dire* is not in the record. Without passing upon this question, the result must be the same if we should hold otherwise and hold that the question was properly presented by the affidavits filed in support of the motion for a new trial and by the counter-affidavits filed by appellee. On these affidavits, it became a question of fact for the trial court to determine whether the facts surrounding the empaneling of the jury and the questions asked the juryman were as stated in the motion for a new trial. The court found against appellant on this question. There was no error in the

action of the court in overruling the motion for a new trial in so far as it related to the alleged misconduct of the juror.

In instructing the jury, the court gave six instructions on its own motion, thirteen tendered by appellee, and thirty-four tendered by appellant. Those tendered by appellant were given first, then those tendered by appellee and lastly those given by the court on its own motion. Appellant contends that this was an abuse of discretion on the part of the court and had an undue influence on the jury. Appellant says the order of giving these instructions was an "unusual departure" and had the effect of grouping all the instructions most favorable to appellee, including a "four-time repetition of the demand" for $15,000. The thirteenth instruction given at the request of appellee related to the measure of damages and ended by telling the jury if it found for plaintiff, the amount of damages assessed should be in such sum as would, in the judgment of the jury, fairly compensate him for his injuries, if any, not to exceed $15,000. The first instruction given by the court on its own motion contained a recital of the allegations of the complaint, including *ad damnum* clause, in which appellee alleged he had been damaged in the amount of $15,000 and demanding judgment, for that amount. This instruction, after telling the jury that appellant had filed an answer of general denial, informed them that the burden was on appellee to prove the material allegations of the complaint by a fair preponderance of the evidence. The second instruction defined what was meant by a preponderance of the evidence, and instruction No. 3 told the jury if they found for the appellee, it would be their duty to fix his damages at such sum as the evidence relating to damages entitled him, not exceeding $15,000. The only other instruction where the amount of damages demanded was mentioned

or referred to was instruction No. 38 given at the request of appellant and which is as follows:

"The plaintiff in the complaint seeks to recover damages in the sum of Fifteen Thousand Dollars. But the fact that he has asked damages in such sum must not influence you in the least in determining whether he is entitled to any damages. And when the Court instructs you that the damages cannot exceed $15,000, it is done only in view of the fact that the plaintiff has named that amount in his complaint. The Court must not be understood as intimating in the least degree whether or not you should assess any damages."

The appellant does not contend that either of these instructions is erroneous, or that the giving of either of them amounts to reversible error. It is said that the court reversed the usual order and that in the instructions tendered by appellee and those given by the court, attention of the jury was four times directed to the fact that appellee asked damages in the sum of $15,000.

The Supreme Court in *Robbins, Exr.,* v. *Fugit* (1920), 189 Ind. 165, said: "When an instruction is once given which fully covers a subject, it should not be repeated. Such needless repetition amounts to an argument on the part of the court and may mislead the jury. It is not always reversible error, but it is always bad practice. It has been repeatedly condemned."

In *Miller* v. *Coulter* (1901), 156 Ind. 290, it was said: "But, even if the instruction transgressed the rule against needless repetition in a charge, such fault, however censurable in some cases, would not in this instance, amount to reversible error, although in more aggravated form, and under some circumstances, it might have that effect." And in *Union, etc., Ins. Co.* v. *Buchanan* (1885), 100 Ind. 63, 80, it was said: "It would not, perhaps, be available error to often repeat,

but it would certainly be a censurable practice, for it would tend to confuse the jury, and might give undue emphasis and prominence to a particular fact, and this it is not well to do."

In *Chicago, etc., R. Co.* v. *Biddinger* (1915), 61 Ind. App. 419, 432, the court, in discussing an instruction which consisted in reading the paragraph of the complaint, said: "It is contended that there are many unnecessary averments in the first paragraph, as read to the jury, which were not proper in the pleading and upon which no evidence was offered, and which were inflammatory in their nature, intended to prejudice the jury, and thereby enhance the amount of the verdict. The practice of reading the complaint to the jury by the court, instead of stating the issues and the theory of the complaint, or each paragraph as the case might be, is a practice, no doubt, subject to criticism, but is not reversible error."

In the case last cited, it was contended that an instruction was erroneous and its giving reversible error because of the repetition of what was alleged to be unnecessary and inflammatory statements intended to prejudice the jury, upon which no evidence was offered, but where, as before noted, the court read the complaint to the jury. We do not think the fact that the court mentioned the amount of appellee's demand for damages can be held to be reversible error, especially in view of the fact that the court gave instruction No. 38 heretofore set out.

Appellant complains of instructions Nos. 8, 11 and 12 given at the request of appellee upon the ground that they assumed certain facts and invaded the province of the jury. This contention cannot prevail. There is no assumption of the existence of any fact in either of said instructions.

Appellant complains of instruction No. 10 given at request of appellee which was to the effect that where a passenger alighted from a car when at a place where the car was stopped for passengers to alight therefrom, and was injured by the negligence of the carrier, such passenger, if free from fault, can recover damages for injuries received. The objection to this instruction is that the court assumed that appellee was injured at a street intersection where the car had stopped for the purpose of allowing passengers to alight and that it had not stopped at a switch, as claimed by the defendant, which was not a place where passengers were received or discharged. There is no merit in this contention. The court did not in any way assume that appellee did or did not leave the car at a place where the same was stopped for passengers to alight therefrom. The instruction was applicable to the evidence and, when taken in connection with all the instructions given, could not in any way have been prejudicial to appellant. Since appellee was not required to allege or prove want of negligence on his part, the expression, "if free from fault" was more favorable to appellant than under the law it was entitled to demand, as, in cases of this kind, a plaintiff may recover unless the evidence shows that he was in fact at fault, that is, negligent.

Andrew James, the motorman in charge of the car was a witness for appellant. He testified, in substance, that the car stopped on a switch to wait for a passing car; that when the other car came, he rang the gong for a signal to the conductor; that he looked back through the car and saw the conductor in the rear of the car on the ground; that he walked back through the car and saw the conductor and appellee back of the car; that he stepped down and asked what was the matter and appellee said he fell; that

the witness and the conductor took appellee to his home; that the car had not moved after it had stopped at the switch until after he found Miller on the ground; that appellee was not on the car that night when the car reached Lafayette street, that being the first street crossed after the car left the switch and the street where appellee testified he was injured. On cross-examination, the witness testified that the car stopped at the switch about 125 feet from Lafayette street; that he did not know how the accident happened and did not have a conversation with Ray Miller at appellee's home that night in which he said, in substance, that he did not know any one was getting off the car until the conductor rang the bell for him to stop when he looked back and saw appellee lying back of the car on the street. In rebuttal, Ray Miller testified as a witness for appellee and over appellant's objection in response to a question stated that, on the night of the accident, when James and the conductor brought appellee home, James said to him, in substance, that he did not know that anyone was getting off the car until the conductor rang the bell for him to stop when he looked back and saw appellee lying back of the car on the street. Appellant contends that the testimony of the witness James which appellee sought to impeach by the witness Ray Miller was brought out on cross-examination by appellee, was not proper cross-examination because the witness had not been interrogated on that subject, that the matter inquired about was not part of the *res gestae* and that it was a collateral issue and appellee was bound by the answer of the motorman. There was no error in overruling the objection to the testimony of Ray Miller. It related to a matter which was properly brought out on cross-examination. The effect of this evidence was to impeach the testimony of the motorman.

Appellant's next contention is that the damages assessed are excessive. We have carefully examined the evidence and see no reason for disturbing the verdict on account of the amount of damages assessed.

Judgment affirmed.