EMPLOYERS MUTUAL CASUALTY COMPANY, an Iowa corporation, subrogee of Miller–Dwan Medical Center, Respondent,

v.

A.C.C.T., Inc., petitioner, Appellant.

No. C0–97–7.

Supreme Court of Minnesota.

June 25, 1998.

Peter E. Lind, Steven D. Pattee, Waldeck & Lind, P.A., Minneapolis, for Appellant.

Charles R. Tuffley, Jeffrey R. Learned, Morrison, Mahoney & Miller, Southfield, Michigan, Joseph F. Lulic, Hanson, Lulic & Krall, Minneapolis, for respondent.

James D. Steiner, David A. Engen, William A. Webster, Robins, Kaplan, Miller & Ciresi, L.L.P., Minneapolis, for amicus curiae Rahr Malting Co.

John M. Anderson, Charles E. Lundberg, Minneapolis, for amicus curiae Associated General Contractors of Minnesota.

## OPINION

TOMLJANOVICH, Justice.

This case presents an issue of first impression before this court. We are asked to decide whether a waiver clause in a standard American Institute of Architects' (AIA) contractor agreement bars all subrogation suits brought by the owner's insurer for damages negligently caused by the contractor while performing pursuant to the contract. We hold that the waiver clause prohibits a subrogation claim by the owner's insurer when the owner has relied upon existing all-risk property insurance coverage which is broader in scope than the coverage required by the contract, thereby covering damages to "work" and "nonwork" property.

Miller–Dwan Medical Center (hereinafter Miller–Dwan) entered into a contract with A.C.C.T. which required A.C.C.T. to perform asbestos abatement in the medical center. The parties used a standard American Institute of Architect's owner-contractor agreement to set forth the terms of the contract.[1] In this contract, Miller–Dwan is referred to as the "Owner" and A.C.C.T. is referred to as the "Contractor." The term "Work" has been defined by the contract as

the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

Three other provisions in this contract are pertinent to our resolution of this case: (1) the contractor's insurance obligations; (2) the owner's insurance obligations; and (3) the waiver clause.

The contractor's requirements are:

The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located insurance for protection from claims under workers' or workmen's compensation acts and other employee benefit acts which are applicable, claims for damages because of bodily injury, including death, and from claims for damages, other than to the Work itself, to property which may arise out of or result from the Contractor's operations under the Contract, whether such operations be by the Contractor or by a Subcontractor or anyone directly or indirectly employed by any of them. This insurance shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater, and shall include contractual liability insurance applicable to the Contractor's obligations under Paragraph 9.12. Certificates of such insurance shall be filed with the Owner prior to the commencement of the Work.

The owner's requirements are:

The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance. Optionally, the Owner may purchase and maintain other insurance for self-protection against claims which may arise from operations under the Contract. The Contractor shall not be responsible for purchasing and maintaining this optional Owner's liability insurance unless specifically required by the Contract Documents.

Unless otherwise provided, the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance upon the entire Work at the site to the full insurable value thereof. This insurance shall be on an all-risk policy form and shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Work and shall insure against the perils of fire and extended coverage and physical loss or damage including, without duplication of coverage, theft, vandalism and malicious mischief.

The waiver provision states:

The Owner and Contractor waive all rights against each other and the Archi-

1. All parties, including the amicus curiae, assert that it is common to use these standard preprinted forms for contractor agreements. The form used in this case was AIA Document A107–1987.

tect, Architect's consultants, separate contractors described in Article 12, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Article 17 or any other property insurance applicable to the Work, except such rights as they may have to the proceeds of such insurance held by the Owner as fiduciary.

To satisfy its insurance obligations as owners, Miller–Dwan relied upon its existing all-risk policy with Employers Mutual Casualty Company (hereinafter Employers Mutual). Neither party has provided this court with the name of the insurance provider that A.C.C.T. employed to cover its obligations, but it is clear that A.C.C.T. did maintain some coverage consistent with the contract requirements. While the contract does not specify exactly what portions of the medical center A.C.C.T. would be working in, A.C.C.T.'s treasurer stated that A.C.C.T. performed asbestos removal throughout the sixth floor of the medical center and on portions of the fifth floor. However, Employers Mutual disputes this fact and asserts that A.C.C.T. only performed asbestos abatement on distinct areas of the sixth floor.

On January 19, 1994, a fire broke out on the sixth floor of the medical center in the area where A.C.C.T. was performing asbestos abatement. The exact cause of the fire is unknown. Some of the areas damaged by fire were never subject to the asbestos abatement contract. Other damaged areas were subject to the contract, but the work had been completed, and at the time of the fire those areas were back in use by the medical center. Employers Mutual paid Miller–

Dwan $537,625.81 to cover all losses from the fire pursuant to Miller–Dwan's all-risk property insurance policy which it relied upon to satisfy the asbestos abatement contract. Employers Mutual then instituted the instant subrogation suit against A.C.C.T. alleging negligence and breach of contract, seeking to recover the monies paid for Miller–Dwan's losses in the fire.

A.C.C.T. moved for summary judgment at the trial court relying upon the waiver clause in the contract between itself and Miller–Dwan, which provided that both parties agreed to waive all rights against the other for damages to the extent that those damages are covered by property insurance. A.C.C.T. argued that Employers Mutual, as subrogee of Miller–Dwan, could not possess more rights than Miller–Dwan possessed and Miller–Dwan had waived its right to sue. The trial court denied the motion for summary judgment, holding that the waiver clause was ambiguous and an issue to be decided by a jury. However, the trial court then certified the issue[2] of whether the waiver clause "completely immunizes a contractor from liability for any property damage and business interruption loss suffered by the owner as a result of the contractor's negligence, even if the property damaged was not the subject of the construction contract and never worked upon by the contractor."

The court of appeals affirmed the trial court's denial of summary judgment and held that "the insurer's subrogation claim against the contractor for damage to non-work property is not barred by the waiver clause." *Employers Mut. Cas. Co. v. A.C.C.T., Inc.*, 568 N.W.2d 530, 534 (Minn.App.1997).[3] We reverse.

---

**2.** A trial court may certify an issue for appellate review pursuant to Minn. R. Civ.App. P. 103.03(h), which states that appeal may be taken "if the trial court certifies that the question presented is important and doubtful, from an order which denies a motion * * * for summary judgment."

**3.** The same issue is currently before the Eighth Circuit Court of Appeals in *Rahr Malting Co. v. Climatic Control Co.*, No. 3–96–528 (D.Minn. May 28, 1997) (order granting defendant's mo-

tion for declaratory judgment), *affirmed*, 150 F.3d 835 (8th Cir.1998). In fact, the owner of the building at issue in that case, Rahr Malting Co., has submitted an amicus curiae brief in this case which generally reflects the interests and arguments presented by Employers Mutual. Similarly, an amicus curiae brief has been submitted by the Associated General Contractors of America, who are represented by the same law firm as Climatic Control Co., the contractors and defendants in the *Rahr Malting* case, and they present arguments which mirror those of A.C.C.T. in the instant case.

## I.

The certified question arises from a denial of summary judgment; therefore, "this court reviews the record to determine whether there are any genuine issues of material fact and whether the lower courts erred in their application of the law." *Art Goebel, Inc. v. North Suburban Agencies, Inc.*, 567 N.W.2d 511, 515 (Minn.1997). However, we find no genuine issues of material fact and "[a] *de novo* standard of review is used to determine whether the district court erred in its application of the law." *Id.* This case primarily involves contract interpretation which is also a question of law subject to *de novo* review. *See id.*

We have previously defined subrogation as "the substitution of an insurer (subrogee) to the rights of the insured (subrogor)." *Medica, Inc. v. Atlantic Mut. Ins. Co.*, 566 N.W.2d 74, 76 (Minn.1997). However, "[i]t is well settled that an insurer, as subrogee, is entitled to no greater rights than those possessed by the insured, the subrogor. The insurer does not possess any independent rights but merely steps in the shoes of the subrogor." *Rowe v. St. Paul Ramsey Med. Ctr.*, 472 N.W.2d 640, 644 (internal quotations omitted). Therefore, an insured may defeat an insurer's right of subrogation by settling and/or releasing all potential claims against the alleged tortfeasors.

A.C.C.T. and amicus curiae Associated General Contractors of Minnesota (hereinafter General Contractors) argue that the waiver provisions should be interpreted as prohibiting a subrogation suit by the insurer. In making our determination we must look at the contract as a whole because "[t]he cardinal purpose of construing a contract is to give effect to the intention of the parties as expressed in the language they used in drafting the whole contract." *Art Goebel*, 567 N.W.2d at 515. Employers Mutual argues that the contract and waiver clause should be interpreted as only waiving the right to subrogate for damages done in the "work" areas and that the waiver clause is ambiguous as to whether it applies to "non-work" property damage. We have stated that "[a] contract is ambiguous if, based upon its language alone, it is reasonably susceptible of more than one interpretation." *Id.* When looking at the contract as a whole, we agree with A.C.C.T.'s and General Contractors' interpretation and find no ambiguity in the contract.

The waiver clause waives the right to sue for any damage "to the extent covered by property insurance obtained pursuant to this Article 17 *or* any other property insurance applicable to the Work" (emphasis added). When reading that in conjunction with the insurance requirement imposed upon the owner—which states that "[u]nless otherwise provided, the Owner [must] purchase * * * property insurance upon the entire Work at the site to the full insurable value thereof" (emphasis added)—the meaning of these provisions seems clear.

The owner has the option of purchasing an all-risk policy specifically to cover the "work" or can rely on any existing property insurance which would cover the "work." However, the waiver clause creates the "work" and "nonwork" distinction based upon the owner's decision to purchase a new policy or to rely upon an existing one. The owner agrees to waive the right to sue for damages done only to the "work" if it purchases a separate all-risk policy specifically to cover the "work." But if the owner relies on an existing policy which is so broad that it covers both "work" and "nonwork" property, it waives the right to sue for all damages done as long as that damage is covered by the policy.

Our interpretation is consistent with the majority of jurisdictions that have ruled on this issue. *See, e.g., Commercial Union Ins. Co. v. Bituminous Cas. Corp.*, 851 F.2d 98, 101 (3rd Cir.1988); *Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau*, 786 F.2d 101, 104–05 (2nd Cir.1986); *American Ins. Co. v. L.H. Sowles Co.*, 628 F.2d 967, 968–69 (6th Cir.1980); *Richmond Steel, Inc. v. Legal & Gen. Assurance Soc'y, Ltd.*, 821 F.Supp. 793, 799–802 (D.P.R.1993); *Industrial Risk Insurers v. Garlock Equip. Co.*, 576 So.2d 652, 656–57 (Ala.1991); *United States Fidelity & Guar. Co. v. Farrar's Plumbing & Heating Co.*, 158 Ariz. 354, 762 P.2d 641, 642 (Ct.App.1988); *Housing Inv. Corp. v. Carris,*

389 So.2d 689, 689–90 (Fla.Dist.Ct.App.1980); *E.C. Long, Inc. v. Brennan's of Atlanta, Inc.,* 148 Ga.App. 796, 252 S.E.2d 642, 647 (1979); *South Tippecanoe Sch. Bldg. Corp. v. Shambaugh & Son, Inc.,* 82 Ind.App. 350, 395 N.E.2d 320, 332–33 (1979); *Willis Realty Assocs. v. Cimino Constr. Co.,* 623 A.2d 1287, 1288–89 (Me.1993); *Haemonetics Corp. v. Brophy & Phillips Co.,* 23 Mass.App.Ct. 254, 501 N.E.2d 524, 526 (1986); *Chadwick v. CSI, Ltd.,* 137 N.H. 515, 629 A.2d 820, 826–27 (1993); *Trump–Equitable Fifth Avenue Co. v. H.R.H. Constr. Corp.,* 106 A.D.2d 242, 485 N.Y.S.2d 65, 67–68 (N.Y.App.Div.), *aff'd,* 66 N.Y.2d 779, 497 N.Y.S.2d 369, 488 N.E.2d 115 (1985); *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.,* 119 Wash.2d 334, 831 P.2d 724, 728 (1992).

Specifically, in *Lloyd's Underwriters v. Craig and Rush, Inc.,* 26 Cal.App.4th 1194, 32 Cal.Rptr.2d 144 (1994), the California Court of Appeals interpreted the same AIA contract as the one at issue in this case. The owner in that case hired the contractors to repair the roof of its rehabilitation center, and during the job rain leaked into the building, causing interior damage. *Id.* at 145. The owner's property insurer paid for the damages and sued the contractors for negligence. *Id.* The California Court of Appeals affirmed summary judgment for the contractors, concluding that the waiver clause applied to bar the subrogation suit. *See id.* at 146. The court stated that the insurers "do not dispute that their policies (1) were applicable to the Work and (2) covered or paid for the loss," and that satisfaction of those two criteria meant that the waiver applied. *Id.* (internal quotations omitted).

That court rejected the cases from other jurisdictions which held that the waiver clause was limited to the "work,"[4] stating that they "ignored the fact that the contractual language defined waived claims not by the type of property damaged but by which

4. The following courts have held that the waiver provision only applies to the "work": *Fidelity & Guar. Ins. Co. v. Craig–Wilkinson, Inc.,* 948 F.Supp. 608 (S.D.Miss.), *aff'd,* 101 F.3d 699 (5th Cir.1996); *Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15 (Mo.1995); *S.S.D.W. Co. v. Brisk Waterproofing Co.,* 76 N.Y.2d 228, 557 N.Y.S.2d 290, 556 N.E.2d 1097 (1990); *Travelers Ins. Cos. v. Dickey,* 799 P.2d 625 (Okla.1990); *Public Em-*

policy provided indemnification against the loss." *Id.* at 148. Similarly, the California Court of Appeals also noted in a footnote that the outcome might have been different had the owner purchased a specific policy only covering the work rather than relying upon its existing all-risk policy. *Id.* at 146 n. 4.

We find the California Court of Appeals' reasoning persuasive and adopt it in resolution of this case. Therefore, Employers Mutual is barred from instituting a subrogation claim against A.C.C.T., pursuant to the waiver clause in the contract between Miller–Dwan and A.C.C.T. We reverse the judgment of the court of appeals and grant summary judgment for A.C.C.T.

Reversed.

GILBERT, J., took no part in the consideration or decision of this case.

*ployees Mut. Ins. Co. v. Sellen Constr. Co.,* 48 Wash.App. 792, 740 P.2d 913 (1987). However, many of these cases do not discuss the type of insurance policy that the owners relied upon and make no distinctions regarding whether this was relevant to the decisions. For that reason, and for pure policy reasons, we find them unpersuasive.