ALMON, Justice.
This is an appeal by the plaintiff, United States Fidelity & Guaranty Company (USF & G), as subrogee of Southern General Contractors, from a summary judgment in favor of defendant, Escambia Electric and Appliance Company. We reverse.
The Escambia County Board of Education employed an architectural firm to design, plan and supervise the construction of an athletic building for W. S. Neal High School. Southern General Contractors was awarded the contract which called for the project to be completed according to plans prepared by the architectural firm. It also included the following provision concerning “extra work” ordered by the School Board:
SECTION 11
EXTRAS:
Without invalidating the contract, the owner may order extra work or make changes by altering, adding to, or deducting from the work; the contract sum being adjusted where necessary or desirable. All work of the kind bid upon shall be paid for at the price stipulated in the proposal, and no claims for any extra work or materials shall be allowed unless the work is ordered in writing by the Architect, acting officially for the owner, and the price is stated in such order.
A builder’s risk insurance policy including fire coverage was obtained by Southern General from United States Fidelity.
Southern General subcontracted with Es-cambia for the installation of a heating and air conditioning system as provided in the plans and specifications prepared by the architects. The following article appeared in the subcontract:
ARTICLE 9
INSURANCE
Prior to starting work, the Subcontractor shall obtain the required insurance from *1074 a responsible insurer, and shall furnish satisfactory evidence to the Contractor that the Subcontractor has complied with the requirements of this Article 9. Similarly, the Contractor shall furnish to the Subcontractor satisfactory evidence of insurance required by the Contract Documents.
The Contractor and Subcontractor waive all rights against each other and against the Owner and all other Subcontractors for damages caused by fire or other perils to the extent covered by property insurance provided under the General Conditions, except such rights as they may have to the proceeds of such insurance.
Escambia deviated from the architectural plans when it installed, with the School Board’s consent and architect’s oral approval, a used central heating and cooling unit which was donated to the school by Escam-bia. Southern General’s President, W. A. Wiggins, advised the School Board that his Company would not be responsible for this deviation from the original plans.
On November 6, 1977, a fire occurred, severely damaging the athletic building. USF & G paid to its insured, Southern General, an amount necessary to repair the structure.
USF & G then brought suit, as subrogee of Southern General, against Escambia. Its complaint alleged negligent installation of the heating and cooling system by Escam-bia and breach of contract, by improperly installing the system which allegedly caused the fire.
On April 11,1979, Escambia filed a third-party complaint against its insurer, Home Indemnity Company, requesting Home Indemnity to provide Escambia with a defense to the action and to pay any amounts which United States Fidelity might be awarded.
Escambia filed a motion for summary judgment with supporting exhibits. USF & G filed a response, supported by affidavits. Escambia’s motion was granted and USF & G appeals.
In support of the trial court’s decision granting summary judgment in its favor, Escambia contends that the School Board is the “owner” under § 11 of its contract with Southern General, and therefore had the right to unilaterally modify the contract. Such a modification occurred when it accepted the used heating and cooling system. Escambia also contends that Article 9 of its subcontract with Southern General bars any action by USF & G against it.
We disagree with the above contentions and find that a genuine issue of material fact has been presented from the pleadings and affidavits which should have prevented the granting of summary judgment. Ragland v. Alabama Power Co., 366 So.2d 1097 (Ala.1978); Folmar v. Montgomery Fair Co., 293 Ala. 686, 309 So.2d 818 (1975). Escambia has failed to show that the opposing party could not recover under any discernible set of circumstances. Loveless v. Graddick, 295 Ala. 142, 325 So.2d 137 (1975).
Article 9 of the subcontract between Es-cambia and Southern General prevents USF & G as subrogee of Southern General from bringing an action against Escambia. However, this Article will apply only if the work performed by Escambia is pursuant to the subcontract. Thus, a question of fact is presented as to whether the installation of the system was pursuant to the subcontract or whether it was an independent act outside the limits of Article 9.
Article 9 must also be construed in conjunction with other provisions of the subcontract. One such provision is Article 11.9 which states:
11.9 The Subcontractor warrants that all materials and equipment furnished and incorporated by him in the Project shall be new unless otherwise specified and that all Work under this Subcontract shall be of good quality, free from faults and defects and in conformance with the Contract Documents. All Work not conforming to these standards may be considered defective. The warranty provided in this Paragraph 11.9 shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Contract Documents.
*1075 This section establishes a warranty placing responsibility on the subcontractor. This responsibility is not limited by any other provision of the contract. It gives to the contractor a right of action against the subcontractor for a breach of this section. A failure to comply with Article 11.9, as has been claimed by USF & G, would give rise to a cause of action in Southern General to which USF & G could be subrogated. A question of fact remains regarding the breach of Article 11.9.
Another question of fact is presented in connection with § 11 of the contract between the School Board and Southern General. This section allows the School Board to order extra work. But this section will apply only if the extra work ordered was within the framework of the contract. This creates a question of fact concerning the School Board’s agreement with Escambia to install this alternate system.
We find there are genuine issues of fact in this case and summary judgment was therefore inappropriate.
REVERSED AND REMANDED.
TORBERT, C. J., and FAULKNER, SHORES and EMBRY, JJ., concur.