TRUMP-EQUITABLE FIFTH AVENUE COMPANY, Respondent, v
H.R.H. CONSTRUCTION CORPORATION et al., Appellants.

First Department, February 7, 1985

### APPEARANCES OF COUNSEL

*Jozef K. Goscilo* of counsel (*Langan & Levy,* attorneys), for H.R.H. Construction Corporation, appellant.

*Amy Greenberg* of counsel (*F. V. Mina,* attorney), for Underhill Industries, appellant.

*William H. Morris* of counsel (*Gerald P. McMorrow* and *Steven A. Costantino* with him on the brief; *Morris, Graham, Stephens & McMorrow,* attorneys), for Alumni Plumbing & Heating Corporation, appellant.

*Thomas M. Smith* of counsel (*Gwertzman, Pfeffer, Toker & Lefkowitz,* attorneys), for respondent.

## OPINION OF THE COURT

Murphy, P. J.

Defendant H.R.H. Construction Corp. (HRH) was the general contractor for the Trump Tower construction project under a contract with the owner, Trump-Equitable Fifth Avenue Company (Trump-Equitable). Pursuant to contracts with HRH, defendants Dic-Underhill Industries and Alumni Plumbing and Heating Corp. were the concrete superstructure and plumbing and fire protection subcontractors, respectively.

On January 29, 1982, a fire on the 27th floor of the building, then under construction, caused extensive damage. Aetna Insurance Company, which had written a builder's all risk insurance policy in February 1981, issued two checks to Trump-Equitable and other named insureds in the total amount of $1,788,106. This represented the total amount of the property loss occasioned by the fire. In December 1982, this action was instituted in the name of Trump-Equitable for the real party in interest, Aetna, as subrogee. The complaint, which sounds in negligence, breach of contract and breach of warranty, essentially alleges that the fire was caused through the fault of the defendants and seeks damages of $1,688,712 for each of 12 causes of action.

Defendants moved for summary judgment based upon the waiver of subrogation clause contained in the prime contract between HRH and Trump-Equitable. This contract consisted of two relevant parts: a typewritten agreement, and a printed American Institute of Architects (AIA) document entitled "General Conditions for the Contract of Construction". These general conditions were incorporated by reference into the typewritten agreement, which additionally provided that both documents were intended to be "read so as to be consistent with one another as possible. However, if anything in the General Conditions is inconsistent with the Agreement, this Agreement shall govern." A similar priority provision was added to the printed general conditions.

Both the printed and the typewritten portions of the contract contained provisions concerning the procurement of insurance. The general conditions required the owner to purchase and maintain property insurance for damages to the construction project to its full insurable value. Such insurance was to include the interests of the general contractor and subcontractors. The general conditions also included the following waiver of subrogation clause: "The Owner and Contractor waive all rights against (1) each other and the Subcontractors * * * for damages caused by fire or other perils to the extent covered by insurance

obtained pursuant to this Paragraph 11.3 or any other property insurance applicable to the Work, except such rights as they may have to the proceeds of such insurance held by the Owner as trustee." The typewritten portion of the agreement provided that the contractor furnish workers' compensation, public liability, comprehensive auto liability, disability and "[o]wners' protective insurance in the name of the Owner, which shall provide bodily injury and property damage on an occurrence basis." Coverage provided by this insurance was not intended to release or exclude the contractor's obligation to indemnify and hold the owner harmless "against all liability, claims, loss, costs, damages and expenses * * * on account of injury or death to any person * * * or damage to property" not caused by the sole negligence of the owner.

Although the defendants did not raise the waiver of subrogation clause as an affirmative defense in their answers, Special Term granted plaintiff's cross motion to dismiss the "affirmative defenses" and denied defendants' motions for summary judgment based upon the clause. The court below, finding the indemnification clause of the agreement and the waiver of subrogation clause of the general conditions inconsistent, held that the indemnification clause controlled under the agreement's priority provisions. We disagree.

Plaintiffs argue that the typewritten portion of the contract shall prevail over the printed general conditions where conflicts arise between the two. The first inquiry, however, is as to whether there is any conflict between the indemnification provision and the waiver of subrogation clause. As a general rule, a contract should be construed so as to give force and effect to all of its provisions. (*Muzak Corp. v Hotel Taft Corp.,* 1 NY2d 42, 46; 22 NY Jur 2d, Contracts, § 222.) This is especially true in situations where, as here, the contract itself expresses the intent of the parties that the documents comprising the entire contract be interpreted so as to be consistent. An examination of the indemnification provision of the typewritten agreement and the printed general conditions does not reveal any inconsistency. The types of insurance which the contractor was required to provide and maintain by the agreement — workers' compensation, public liability, comprehensive automobile liability, etc. — evidence the intent of the parties that the owner would be indemnified and held harmless from liability to third parties. Plaintiff makes no claim that such third-party coverage was not provided by the defendants. In contrast, the general conditions required the owner to obtain first-party coverage for property

loss in the event of damage to the building during construction and to waive its right of subrogation in favor of the defendants. Inasmuch as the owner has been fully recompensed for its loss, the indemnification provision is inapplicable and the waiver of subrogation clause governs. Such a result would not, as plaintiff argues, result in an illegal contracting away of liability by defendants of their own negligence, if negligence there was. When a similar waiver of subrogation clause was attacked as an illegal exemption from liability and invalid under General Obligations Law § 5-323, the Second Department characterized it as "not a contracting away of liability, but only of subrogation rights". (*Board of Educ. v Valden Assoc.*, 60 AD2d 617, 618, *affd* 46 NY2d 653.) As stated in more practical terms by the Court of Appeals, such a waiver of subrogation provision, "in effect simply require[s] one of the parties to the contract to provide insurance for all of the parties" (*Board of Educ. v Valden Assoc.*, 46 NY2d 653, 657, *affg* 60 AD2d 617, *supra*).

In light of our holding that there is no conflict between the contractual provisions in question and that the waiver of subrogation clause stands as a complete bar to the instant action, it is not necessary to rule on defendants' alternate argument for dismissal, i.e., that the owner should have named the defendants as additional insureds under Aetna's policy. We therefore express no opinion on that aspect of the appeal.

Accordingly, the order of the Supreme Court, New York County (Ascione, J.), entered February 2, 1984, denying defendants' motions for summary judgment and granting plaintiff's cross motion to dismiss the affirmative defenses based upon contractual waiver of subrogation rights, is reversed, on the law, with costs, the cross motion denied and defendants' motions for summary judgment granted.

SULLIVAN, ROSS and CARRO, JJ., concur.

Order, Supreme Court, New York County, entered on February 2, 1984, unanimously reversed, on the law, the cross motion to strike affirmative defenses denied, and defendants' motions for summary judgment granted. Appellants shall recover of respondent one bill of $75 costs and disbursements of this appeal.