**TOKIO MARINE AND FIRE INSURANCE COMPANY LIMITED and Kajima International, Inc., Plaintiffs-Appellees,**

v.

**EMPLOYERS INSURANCE OF WAUSAU, A Mutual Company, and Wausau Underwriters Insurance Company, Defendants-Appellants.**

No. 65, Docket 85–7368.

United States Court of Appeals, Second Circuit.

Argued Oct. 2, 1985.

Decided March 20, 1986.

Jerome Murray, New York City (Robert G. Post, Hendler & Murray, P.C., New York City, of counsel), for defendants-appellants.

Arthur N. Lambert, New York City (Carol A. Pisano, Lambert & Weiss, New York City, of counsel), for plaintiffs-appellees.

Before FRIENDLY,* MANSFIELD and WINTER, Circuit Judges.

WINTER, Circuit Judge:

This is a declaratory judgment action to determine which of several insurance policies covered water damage to a Florida construction project. Defendants Employers Insurance of Wausau ("Employers") and Wausau Underwriters Insurance Company ("Wausau") appeal from Judge Knapp's grant of summary judgment for plaintiffs Tokio Marine and Fire Insurance Company ("Tokio Marine") and its insured, Kajima International, Inc. ("Kajima"), the general contractor. An examination of the various insurance contracts and the contractual arrangements among the parties reveals that the damage ultimately comes under the policy of Tokio Marine, the "all risk" property insurer. The judgment of the district court is therefore reversed.

The incident leading to this litigation occurred on the site of Seawinds Joint Venture ("Seawinds"), a condominium project in Florida. Plaintiff Kajima was the general contractor. Kajima retained South Florida Air Conditioning Inc. ("South Florida") as a subcontractor to install the project's air-conditioning system. On March 7, 1983, a clamp and hose slipped off the adapter of the air-conditioning unit to which they had been attached, causing water to flow out of the hose, down the elevator shafts, and out of the main entrance doors sixteen floors below. South Florida's Project Manager announced the same day that the incident had been caused by the subcontractor's improper installation of the hose and clamp. After the damage occurred, Tokio

Marine undertook a claim investigation, indemnified Kajima for the full damages of $716,558.40, and is now a plaintiff along with Kajima in the attempt to collect from defendants, South Florida's liability insurers.

Before examining the terms of the relevant insurance policies, we must review the proceedings in the district court in order to determine what issues are properly before us. The action began in May, 1984, and sought a declaratory judgment as to which policy covered the loss. On June 7, defendants filed a motion to dismiss that was followed by a motion for summary judgment by plaintiff. On July 31, 1984, the district court granted the plaintiffs' motion for summary judgment, but without prejudice to reopening if defendants should file an answer placing South Florida's negligence or the measure of damages in issue. The court thereby barred the raising of other defenses.

On September 12, upon receipt of defendants' first answer, which included an allegation that sabotage caused the accident, Judge Knapp reopened the case and referred it to Magistrate Buchwald to supervise discovery and report her conclusions as to whether there were genuine disputes of fact as to negligence or damages. An amended answer of no consequence to this appeal was also filed.

On November 2, defendants moved for leave to file a second amended answer alleging affirmative defenses not mentioned in the previous answers. The most significant of these defenses was the claim that plaintiffs had waived their subrogation rights to sue South Florida and its liability insurers for any damage covered by property insurance issued by Tokio Marine as provided under the General Conditions of the contract between Seawinds and Kajima, which are included by reference in the subcontracts. The Magistrate granted the motion to amend solely "to facilitate the pre-

* Judge Friendly participated in oral argument and concurred in this opinion before his death on March 11, 1986.

sentation of this case to the Court of Appeals should an appeal be forthcoming." On March 19, 1985, the Magistrate issued her report, concluding that no viable issue of fact existed, and refusing to address the affirmative defense on the ground that it went beyond the scope of Judge Knapp's reference. Judge Knapp adopted the report on April 16, 1985, but overruled the Magistrate's decision to allow defendants' motion to amend their answer, thus ruling the affirmative defenses out of the case. Judgment was entered for $716,558.40 plus interest from the date of the water damage. This appeal followed.[1]

We believe the waiver of subrogation affirmative defense was erroneously excluded from the case. At the July 6 oral argument on the parties' respective motions to dismiss and for summary judgment, defendants' counsel stated that "there is indication that [Tokio Marine and Kajima] ... had a waiver of claims provision which is in the general conditions of the contract between them which may bar the claim." He also stated that defendants had not yet obtained the General Conditions of the construction contract between Seawinds and Kajima.

On July 31, despite the mention of the possible waiver of subrogation defense, Judge Knapp entered summary judgment for plaintiffs and barred all defenses except those concerning South Florida's negligence and the amount of damages. As a consequence of this decision, defendants' later attempts to assert the defense in question were held to be untimely.

Rule 15(a), Fed.R.Civ.P., states that leave to amend "shall be freely given when justice so requires." The Supreme Court has made clear that "this mandate is to be heeded," and that leave to amend should be permitted in the absence of an apparent or declared reason, such as undue delay, bad faith, or undue prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). This court has applied the *Foman* rule where "[t]he amended claim was obviously one of the objects of discovery and related closely to the original claim...." *State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981). Here, the waiver of subrogation provisions contained in the General Conditions were an object of discovery. Moreover, the affirmative defense arising from these provisions had been explicitly foreshadowed at the oral argument of July 6, before the General Conditions had become available to defendants, and there has been no showing by plaintiffs that they suffered any prejudice from the relatively brief delay in defendants' attempt to amend their answer. We therefore hold that it was an abuse of discretion for the district court not to allow defendants to amend and assert their affirmative defenses.

---

1. We also believe Judge Knapp erred in his rationale for granting summary judgment in favor of plaintiffs on July 31, 1984. Plaintiffs' original theory of liability was not that defendants, as liability insurers of South Florida, were bound to reimburse plaintiffs for damages caused by South Florida's negligence, but rather that defendants were required to indemnify Kajima for its own liability for the loss since it was also an insured under South Florida's liability policies. When defendants originally moved to dismiss on the ground, properly determined by Judge Knapp to be erroneous, that Kajima was not an insured under South Florida's liability policies, Judge Knapp held this to be a waiver of defendants' right to insist on fulfillment of conditions precedent to recovery under the policies, including the right to demand that Kajima's legal liability for the loss be determined first. Plaintiffs have never suggested in what manner Kajima, as general contractor, might have been liable for the loss caused by South Florida's negligence, and the possibility of defendants' liability as insurers of Kajima had never been raised prior to this litigation. Judge Knapp's ruling in effect prohibited defendants from contesting the only liability—Kajima's—that would have been crucial to the case under plaintiffs' theory. The cases cited by Judge Knapp for this broadsweeping waiver of the insurer's contractual rights upon erroneously denying coverage to an insured, e.g., *Foreign Credit Corp. v. Aetna Casualty & Surety Co.*, 276 F.Supp. 791 (S.D.N.Y. 1967); *HS Equities, Inc. v. Hartford Accident & Indemnity Co.*, 609 F.2d 669 (2d Cir.1979), are simply inapposite because here there would have been no prejudice to the rights of the insured from insisting on the condition precedent after the erroneous denial of coverage.

We turn now to the merits of the waiver of subrogation defense. We need not remand because neither party raises a disputed issue of fact relevant to this appeal, and the meaning of the contracts has been fully briefed and argued by the parties.

Article 11.3 of the General Conditions of the Contract for Construction between the owner of the project, Seawinds, and the general contractor, Kajima, required the owner to purchase property insurance that would cover the interests of the owner, contractor, and subcontractors in the projects.[2] This was first-party insurance provided by Tokio Marine, and the policy required the insurer to indemnify the insured for loss to the property of the construction project. Paragraph 11.3.6 of the General Conditions of the Contract for Construction added a standard "waiver of subrogation" provision, which provided that Seawinds and Kajima waived all claims against each other and, inter alia, against all subcontractors "to the extent covered by insurance obtained pursuant to this Paragraph 11.3."[3] Article 9.2 of the contract between Kajima and South Florida includes the subcontractor in the waiver of subrogation. A waiver of subrogation is useful in such projects because it avoids disruption and disputes among the parties to the project. It thus eliminates the need for lawsuits, and yet protects the contracting parties from loss by bringing all property damage under the all risks builder's property insurance.

In contrast, the insurance provided by defendants was liability insurance. This insurance covered damage to third parties arising from the construction project, such as injuries to passersby or damage to adjoining property. These risks were not covered by the first-party insurance, which covered only the project itself. Article 16.7 of the contract between Kajima and South Florida thus required South Florida to obtain liability insurance, and to "furnish the Contractor with a certificate of insurance showing the above coverage and adding the Contractor as an additional insured." South Florida obtained this insurance, with Employers insuring liability up to the predetermined limits, and Wausau insuring the excess.

New York law recognizes the distinction between property and liability insurance in circumstances such as those presented here. In *Trump-Equitable Fifth Avenue Co. v. H.R.H. Construction Corp.*, 106 A.D.2d 242, 485 N.Y.S.2d 65 (1st Dept. 1985), *aff'd mem.*, 66 N.Y.2d 779, 488 N.E.2d 115, 497 N.Y.S.2d 369 (1985), which involved contractual provisions virtually identical to those involved here, the court held that fire damage to a construction project allegedly caused by the negligence of a subcontractor was covered by a builder's all risks insurance policy, and that the property insurer could not recover in subrogation from the subcontractor's liability insurer for damage to the construction project. In that case, a clause in the contract between the owner and the contractor stated that the contractor would hold the owner harmless " 'against all liability, claims, loss, costs, damages and expenses ... on account of injury or death to any person ... or damage to property ...' not caused by the sole negligence of the owner." *Id.* 106 A.D.2d at 244, 485 N.Y.S.2d at 67.

■ Similarly, in the contract between Kajima and South Florida, Article 16.6 pro-

---

**2.** "11.3 PROPERTY INSURANCE

11.3.1 Unless otherwise provided, the Owner shall purchase and maintain property insurance upon the entire Work at the site to the full insurable value thereof. This insurance shall include the interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Work and shall insure against the perils of fire and extended coverage and shall include 'all risk' insurance for physical loss or damage in-

cluding, without duplication of coverage, theft, vandalism and malicious mischief."

**3.** "11.3.6 The Owner and Contractor waive all rights against (1) each other and the Subcontractors, Sub-subcontractors, agents and employees each of the other ... for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to this Paragraph 11.3 or any other property insurance applicable to the Work...."

vides that South Florida shall indemnify and hold Kajima harmless "from and against all claims, damages, liability or expenses arising out of or in connection with the acts or omissions of the Subcontractor, its officers, employees, agents or subcontractors." As in *Trump-Equitable,* this promise extends only as far as the scope of the liability insurance. To rule otherwise would ignore the purpose of a waiver of subrogation provision, which "in effect simply require[s] one of the parties to the contract to provide [property] insurance for all of the parties." *Board of Education v. Valden Associates, Inc.,* 46 N.Y.2d 653, 657, 389 N.E.2d 798, 799, 416 N.Y.S.2d 202, 203 (1979) (per curiam). Florida law on this question is consistent with that of New York. *See Housing Investment Corp. v. Carris,* 389 So.2d 689, 690 (Fla.Dist.Ct.App. 1980) ("[T]he only reasonable conceivable purpose of a construction contract provision placing an obligation on the owner to carry insurance is to benefit the contractor by providing him protection and exculpation from risk of liability for the insured loss.... [T]he contract insurance provision is valuable to the contractor for the very purpose ... [of] limit[ing] the owner to insurance proceeds even though the loss was caused by the negligence of the contractor."). That property insurance was purchased here by Seawinds, and sold by Tokio Marine. Tokio Marine and Kajima have no claim against defendants.

Reversed with instructions to enter judgment for the defendants.