■ S.S.D.W. Co., Appellant, v Brisk Waterproofing Com-

PANY, INC., Respondent and Third-Party Plaintiff-Respondent. COYNE ELECTRICAL CONTRACTORS, INC., Third-Party Defendant-Respondent.—Order, Supreme Court, New York County (Martin B. Stecher, J.), entered February 18, 1988, which granted defendant-respondent's motion for summary judgment dismissing the complaint and which, *sua sponte,* also dismissed the third-party complaint, modified, on the law, to reinstate the complaint only to the extent that it seeks damages for losses to portions of the building not included in the contractual work and to reinstate the third-party complaint, and otherwise affirmed, without costs.

Plaintiff-appellant, the owner of Carnegie Towers located at 115 East 87th Street in Manhattan, entered into a contract with defendant-respondent which was to replace windows and perform corrective work on the exterior walls of the building and the floor slab of the parking garage for the sum of $1 million. The agreement was embodied in the American Institute of Architects' (AIA) form contract for construction projects of limited scope, together with the addenda thereto, the contract drawings and specifications. The contract required the owner to maintain an all-risk insurance policy "upon the entire Work at the site to the full insurable value thereof." Paragraph 17.6 thereof provided: "The Owner and Contractor waive all rights against each other for damages * * * covered by insurance obtained pursuant to this Article or any other property insurance applicable to the Work".

A fire in 1984, which started in a shack constructed by respondent on a fifth-floor terrace, caused approximately $140,000 in damages to the hallways and apartments and to the exterior work on the building. Appellant recovered $139,351.74 from its property insurer seven months after the fire. This negligence action to recover for property damages caused by the fire was instituted in appellant's name; however, it is not disputed that appellant's insurer is the real party in interest, suing as appellant's subrogee.

Respondent moved for summary judgment dismissing the complaint on the ground that the contractual waiver of appellant's subrogation rights barred the action, citing *Trump-Equitable Fifth Ave. Co. v H.R.H. Constr. Corp.* (106 AD2d 242 [1st Dept], *affd* 66 NY2d 779 [1985]), wherein it was held that the waiver of subrogation clause, identical to the one herein, was a complete bar to the insurer's action as subrogee. Supreme Court granted the motion and, *sua sponte,* dismissed respondent's third-party action against the electrical subcontractor.

We find the court's reliance on *Trump-Equitable Fifth Ave.*

*Co. (supra)* misplaced. That case is distinguishable on the facts. There the "work" to be performed by the contractor and insured under the owner's all-risk policy was the construction of an entirely new building. In this case, however, the work was more limited in scope, involving only "corrective work to the masonry and concrete portions of the exterior walls" of an existing building. There was no waiver affecting recovery for damages to the work site, as Supreme Court erroneously concluded. The waiver barring recovery extended only to "damages covered by insurance * * * applicable to the Work". The fact that the contract work was spread over approximately 30 stories of this high-rise building does not, as the dissent contends, expand the scope of this technical term to include the building in its entirety. The word "work" as used in the AIA standard forms has a technical meaning in the construction industry, denoting either the construction project itself or the labor and materials required therefor *(see, Whitacre Constr. Specialties v Aetna Cas. & Sur. Co.,* 86 AD2d 972 [4th Dept], *affd* 57 NY2d 1018 [1982]).

We also must disagree with the dissent's argument that the waiver of subrogation was intended to effect a "final adjustment" between the parties as to any and all insured losses to the property arising from the repair work to be performed. The owner's obligation under article 17 was to obtain coverage for its interest and that of the contractor "in the Work." Any other coverage the owner may have had for the property was not, by the terms of paragraph 17.6, subject to the waiver of subrogation therein. To the extent that the fire damaged portions of the building other than the exterior walls and areas defined as part of the "Work", appellant is entitled to recover for that loss. Consequently, summary judgment was warranted only as to that portion of the complaint seeking recovery for damages to areas defined as part of the contract work. Concur—Ross, J. P., Asch and Rosenberger, JJ.

Ellerin, J., dissents in a memorandum as follows: The waiver of subrogation clause in the contract between the parties should be a complete bar to the action, in accordance with the unequivocal holding of *Trump-Equitable Fifth Ave. Co. v H.R.H. Constr. Corp.* (106 AD2d 242, *affd* 66 NY2d 779). The fact that the building in *Trump-Equitable* was under construction while the extensive work here was to be performed on an existing building does not change the import of the controlling contractual provisions.

Defendant Brisk Waterproofing contracted with the plaintiff, the owner of the Carnegie Towers apartment building, to

perform extensive, complete renovation of brick panels, masonry walls, and windows on each of the building's 38 floors. The contract, an industry-wide standard form contract, required the building owner to obtain property insurance, and contained a provision whereby the owner and contractor each waived their rights of subrogation. The relevant paragraphs, which are here at issue, read as follows:

"17.3. Unless otherwise provided, the Owner shall purchase and maintain property insurance upon the entire Work at the site to the full insurable value thereof. This insurance shall include the interests of the Owner, the Contractor, Sub-contractors and Sub-sub-contractors in the work and shall insure against the perils of fire and extended coverage and shall include 'all risk' insurance for physical loss or damage including, without duplication of coverage, theft, vandalism, and malicious mischief. * * *

"17.6. The Owner and Contractor waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to this Article or any other property insurance applicable to the Work".

On May 24, 1984, a fire erupted in a construction shed maintained by the defendant on a fifth-floor patio and spread to other portions of the building, causing extensive property damage in the amount of approximately $140,000. Two months after the fire, the owner submitted a claim to its insurer, and in December 1984 was paid in settlement thereof $139,351.74 on account of the damages caused by the fire. The payment was made under a single policy, a copy of which has not been submitted by the appellant insurer.

Thereafter, the insurer, in the name of the building owner, as subrogee, commenced this action against Brisk to recover the amount it had paid to its insured, S.S.D.W. Defendant Brisk moved for summary judgment, claiming that the contract's waiver of subrogation clause was a complete bar to the plaintiff's action. The IAS court, after a thorough and careful analysis of both the relevant contract provisions and controlling legal principles, found that the waiver clause effectively barred plaintiff insurer's subrogation claim, and granted summary judgment dismissing the complaint.

Waiver of subrogation clauses such as the one here in issue have now become standard in construction contracts in conjunction with other provisions in such contracts which require one or the other of the parties to obtain insurance to protect against fire and other risks to the property involved. In a case

involving similar contractual provisions, it was aptly noted that a waiver of subrogation is useful because it serves to avoid disputes among the parties to the project and to eliminate the need for costly litigation while protecting the contracting parties from loss by bringing all property damage under the all-risks builder's property insurance. *(Tokio Mar. & Fire Ins. Co. v Employers Ins.,* 786 F2d 101, 104.) The intent of the waiver provision is to give effect to the requirement in the contract that one party, here the owner, provide property insurance for all the parties *(Trump-Equitable Fifth Ave. Co. v H.R.H. Constr. Co.,* 106 AD2d 242, *affd* 66 NY2d 779, *supra; Board of Educ. v Valden Assocs.,* 46 NY2d 653).

The majority limits the waiver clause to "damages covered by insurance * * * applicable to the Work" by selectively referring to only a portion of the language contained therein. But paragraph 17.6 is far broader than that. It also expressly extends to "damages caused by fire or other perils to the extent covered by insurance obtained pursuant to this article". Under the article referred to (art 17), the owner was required not only to maintain property insurance upon the entire work at the site but was also required to "insure against the perils of fire and extended coverage and shall include 'all risk' insurance for physical loss or damage". The owner obtained the coverage required pursuant to such provision and the insurer under that single policy paid the entire amount of the property loss incurred by reason of the fire. Indeed, in making such payment the insurer, here the real party plaintiff, acknowledged that the coverage contemplated by paragraph 17.3 of the contract was protection for the entire building against risks of fire and other perils that might arise out of the work and was not to be limited in the artificial and unrealistic fashion now urged by it. In any event, as the IAS court noted, the description of the work, as set forth in the contract and attachments, clearly shows that the site of the work was the entire 38-story building.

An identical waiver of subrogation clause was before the court in *Trump-Equitable Fifth Ave. Co. v H.R.H. Constr. Corp. (supra),* where it was held to be a complete bar to a subrogation action brought by the insurer against the contractor to recover the amount of the property loss occasioned by a fire which the insurer had been obliged to pay under its policy to the owner of the premises. That holding attached no significance to the fact that the building was under construction rather than under repair, as in the instant case. The emphasis in the *Trump* decision was on the intent of the

parties to the construction contract—i.e., the owner and the contractor—to insulate themselves against potential risks and liabilities stemming from the project by way of various insurance coverages which, upon payment, would be the final adjustment of the loss between themselves and not subject to further proceedings by way of subrogation. That same intent is clearly manifested in the present contract and should be honored. *(See also, Village of Rosemont v Lentin Lbr. Co.,* 144 Ill App 3d 651, 494 NE2d 592.)

Since the fire in this case arose from the work under the contract and caused damages that were covered by insurance required by the contract, the waiver of subrogation provision applies and is a complete bar to the subrogation action herein. Accordingly, the order granting defendant summary judgment should be affirmed.