The primary issue presented by these appeals is whether an insurer who has paid to its insured, the owner, proceeds for damages incurred as a result of a fire that occurred during the construction of a shopping mall, is subrogated to the rights of the owner, and, if so, whether the insurer can sue a subcontractor that was allegedly negligent on the job and whose negligence, it argues, caused the fire.
The trial court determined, as a matter of law, that the insurer, Industrial Risk Insurers (hereinafter referred to as "IRI"), had no subrogation rights against a subcontractor on the job and therefore granted the motion for a directed verdict filed by a subcontractor, Seyforth Roofing Company. IRI appeals from that judgment. Garlock Equipment Company, the manufacturer of a tar kettle used by Seyforth, cross-appeals, contending that it is in the same legal position as Seyforth, and that although the jury returned a verdict in its favor, the trial court erred in denying its similar motion for a directed verdict. In deciding the primary issue, we must construe the provisions of IRI's "builder's risk" policy and determine, after a consideration of all the facts, whether Seyforth *Page 654 
and Garlock were entitled to a judgment as a matter of law on IRI's claim of a right to be subrogated to the rights of its insured, the owner.
IRI insured Jim Wilson Associates, Inc. (hereinafter referred to as "JWA"), under a "builder's risk" policy against hazards in connection with the construction of the Galleria Mall in Hoover, Alabama. JWA acted as the "authorized representative" for Riverchase Mall Associates, a partnership that owned the Galleria Mall.
On June 5, 1985, while the Galleria Mall was under construction, a fire occurred on the roof of the mall's office tower, causing extensive damage to the roof and to the top floors of the tower. IRI paid $417,000 to JWA pursuant to the builder's risk policy. IRI claims that it thereby became subrogated to any potential claims that JWA may have had against the party or parties responsible for causing the fire.
On May 30, 1986, IRI sued Seyforth, the roofing subcontractor, and Garlock, the manufacturer of an allegedly defective tar kettle used by Seyforth. IRI claimed that Seyforth had agreed to indemnify JWA for damage or destruction caused by or resulting from work performed by Seyforth and that Seyforth's negligence had caused or had combined to cause the fire and resulting damage.
The trial court denied both Seyforth's motion to dismiss and its subsequent motion for summary judgment. However, at the close of all of the evidence, the trial court directed a verdict in favor of Seyforth. The jury later returned a verdict in favor of Garlock. Judgment was entered for Seyforth and Garlock.
IRI argues on appeal that the trial court committed reversible error in directing a verdict for Seyforth and erred in its jury instructions regarding IRI's claims against Garlock. Garlock maintains on cross-appeal that the trial court erred in denying its motion for directed verdict. Garlock also argues that IRI is not a real party in interest; that JWA has no interest in the proceeds paid by IRI as the result of the fire; and that JWA was contributorily negligent and had assumed the risk, thus defeating the claims to which IRI asserts it is subrogated.
Essentially, we must determine whether the trial court properly directed a verdict for Seyforth; whether it erroneously failed to grant Garlock's similar motion for directed verdict; and, if the trial court properly refused Garlock's motion for directed verdict, whether it erroneously instructed the jury, thereby prejudicing IRI. Initially, we must interpret the language found in the "General Conditions of the Contract for Construction" in conjunction with the language found in Seyforth's subcontract.
JWA entered into a contract with Harbert International, Inc., whereby Harbert International would be the general contractor for the construction of the Galleria Mall and the adjoining office tower. Harbert International then entered into a subcontract with McDevitt Street Co. for the construction of the office tower; McDevitt Street then entered into a subcontract with Seyforth for the construction of the office tower roof. In performing its duties under the subcontract, Seyforth used a tar kettle manufactured by Garlock.
McDevitt Street's subcontract with Seyforth provided as follows:
 "11. Insurance. Before commencing the Work and until completion and final acceptance thereof by Owner, Subcontractor shall obtain and maintain, at its expense, at least the insurance coverages specified in Schedule E attached hereto, all from companies, and in form and substance, acceptable to Contractor. . . .
 "To the extent that Subcontractor maintains insurance coverage for loss or damage to property, Subcontractor hereby waives subrogation of claims against Contractor, Owner, other subcontractors, and their agents, employees and servants."
In paragraph 12 of this subcontract, Seyforth agreed to "defend, indemnify and save harmless Contractor and Owner, and their agents, servants and employees, from and against any claim, cost, expense, or liability." *Page 655 
IRI also points out that paragraph 14 required Seyforth to "comply with all statutes, ordinances, rules, regulations and orders" of the governmental body having jurisdiction over the construction. This paragraph mandated that Seyforth
 "defend, indemnify and save harmless Contractor and Owner and their agents, servants and employees from and against any loss, liability or expense arising from any such violations and any citations, assessments, fines or penalties resulting therefrom."
Additionally, paragraph 25 of this subcontract stated that Seyforth "shall take reasonable precautions to protect the Work from loss or damage prior to acceptance by Owner." IRI argues that by the terms of the subcontract, Seyforth agreed to indemnify and hold the contractor and owner harmless from damage to or destruction of property. This, argues IRI, allows IRI the right of subrogation against Seyforth.
However, this subcontract also incorporates by reference JWA's "General Conditions of the Contract for Construction." Section 11.3.1 of the "General Conditions" states:
 "Unless otherwise provided, the Owner shall purchase and maintain property insurance upon the entire Work at the site to the full insurable value thereof. This insurance shall include the interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Work and shall insure against the perils of fire and extended coverage and shall include 'all risk' insurance for physical loss or damage including, without duplication of coverage, theft, vandalism and malicious mischief. . . ."
Section 11.3.6 of the "General Conditions" provides for a waiver of subrogation:
 "The Owner and the Contractor waive all rights against (1) each other and the Subcontractors, Sub-subcontractors, agents and employees each of the other, and (2) the Architect and separate contractors, if any, and their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to this Paragraph 11.3 or any other property insurance applicable to the Work, except such rights as they may have to the proceeds of such insurance held by the Owner as trustee. . . ."
Seyforth maintains that its subcontract with McDevitt 
Street acts in harmony with the incorporated "General Conditions"; that the language is clear and unambiguous with regard to the waiver of subrogation clause in the "General Conditions"; and that the trial court, by directing a verdict, correctly determined that as a matter of law IRI had contractually waived its right of subrogation against Seyforth. IRI contends that Seyforth's subcontract contains additional provisions contrary to Article 11 of the "General Conditions" and that those provisions in the subcontract take precedence over the "General Conditions" and that a material issue of fact is thus presented.
IRI relies on the case of United States Fidelity GuarantyCo. v. Escambia Electric Appliance Co., 384 So.2d 1073
(Ala. 1980), in which this Court reversed a summary judgment entered in favor of a subcontractor that allegedly had deviated from the architectural plans when it installed, with the consent of the owner and with the architect's oral approval, a used heating/cooling system that allegedly caused a fire. The contractor in that case, Southern General, entered into a subcontract with Escambia Electric for the installation of a heating/cooling system in a high school athletic building under construction.
In Escambia Electric, Southern General had purchased a builder's risk insurance policy from U.S.F. G. containing a "waiver of subrogation" clause similar to that incorporated by reference in Seyforth's subcontract with McDevitt Street. When a fire damaged the building, U.S.F. G. paid to Southern General the amount required to repair the structure. U.S.F. 
G., as subrogee, then sued Escambia Electric, alleging that it had negligently installed the used heating/cooling system that allegedly caused the fire. Escambia moved *Page 656 
for summary judgment, and the trial court granted the motion. U.S.F. G. appealed to this Court.
While recognizing that the subcontract between Southern General and Escambia Electric contained a waiver of subrogation clause, this Court reversed the judgment of the trial court and stated that there existed questions of fact with regard to whether Escambia's "installation of the [used] system was pursuant to the subcontract or whether it was an independent act outside the limits [of its subcontract with Southern General]." 384 So.2d at 1074.
We have closely examined the facts in Escambia Electric, and we conclude that that case is distinguishable from the instant case. In Escambia Electric, this Court specifically stated that "Article 9 of the subcontract between Escambia and Southern General prevent[ed] U.S.F. G. as subrogee of Southern General from bringing an action against Escambia," but that Article 9 would apply "only if the work performed by Escambia is pursuant to the subcontract." The Court then explained that summary judgment was not proper in that case because "a question of fact [was] presented as to whether the installation of the system was pursuant to the subcontract or whether it was an independent act outside the limits of Article 9." 384 So.2d at 1074.
We believe that Escambia Electric stands for the general rule that an owner does not retain subrogation rights against a negligent contractor or subcontractor, when the owner's builder's risk insurance policy contains a "waiver of subrogation" clause. In this case, such a "waiver of subrogation" clause is incorporated by reference in Seyforth's subcontract with McDevitt Street. The purpose of a waiver of subrogation clause is to require one party to the contract to provide property insurance for all of the parties. Board ofEducation v. Valden Associates, Inc., 46 N.Y.2d 653,416 N.Y.S.2d 202, 389 N.E.2d 798 (1979).
In South Tippecanoe School Bldg. Corp. v. Shambaugh Son,Inc., 182 Ind. App. 350, 395 N.E.2d 320 (1979), the court held that a builder's risk insurer was not entitled to subrogation against allegedly negligent contractors, subcontractors, materialmen, and architects. The court stated that all subcontractors and materialmen were included under the waiver of subrogation clause and that to allow subrogation would lead to conflicts of interest and costly litigation. Summary judgment was therefore, properly entered in favor of the subcontractors, materialmen, and architects.
Appellee Seyforth cites several more recent decisions for this rule. In Trump-Equitable Fifth Avenue Co. v. H.R.H.Construction Corp., 106 A.D.2d 242, 485 N.Y.S.2d 65 (1985),aff'd, 66 N.Y.2d 779, 497 N.Y.S.2d 369, 488 N.E.2d 115 (1985), which involved provisions virtually identical to those in JWA's contract with Harbert International (the AIA "General Conditions for the Contract of Construction" were incorporated by reference into the contract between Trump-Equitable and H.R.H.), the court held that fire damage to a construction project allegedly caused by the negligence of a subcontractor was covered by the builders risk policy and that the insurer could not recover in subrogation from the subcontractor's liability insurer for the damage to the construction project. The New York court found no conflict between the language in the subcontract and the "General Conditions" stating that the owner obtains first-party coverage for property loss in the event of damage to the building during construction and waives its right of subrogation. That court further held that the subcontractor maintains third-party coverage and thus does not contract away his liability.
Waiver of subrogation was further explained in Tokio Marine Fire Insurance Co. Ltd. v. Employers Insurance of Wausau,786 F.2d 101 (2d Cir. 1986). There, the general contractor and its insurer brought a declaratory judgment action to determine which of several insurance policies covered water damage to a Florida construction project. The court stated that the provision in the subcontractor's contract that it indemnify and hold the general contractor or owner harmless from and against all *Page 657 
claims arising out of the acts or omissions of the subcontractor "extends only as far as the scope of the liability insurance," and that "[to] rule otherwise wouldignore the purpose of a waiver of subrogation provision, which'in effect simply require[s] one of the parties to the contractto provide [property] insurance for all the parties.' "
786 F.2d at 105 (emphasis added), quoting Board of Education,supra, 46 N.Y.2d at 657, 416 N.Y.S.2d at 203, 389 N.E.2d at 799.
In Housing Investment Corp. v. Carris, 389 So.2d 689, 690
(Fla.Dist.Ct.App. 1980), the court noted:
 "[T]he only reasonable conceivable purpose of a construction contract provision placing an obligation on the owner to carry insurance is to benefit the contractor by providing him with protection and exculpation from risk of liability for the insured loss. . . ."
Other jurisdictions in which courts have interpreted the waiver of subrogation clause to disallow subrogation as a matter of law include National Union Fire Ins. Co. v.Engineering-Science, Inc., 884 F.2d 1208 (9th Cir. 1989); UnitedStates Fidelity Guaranty Co. v. Farrar's Plumbing HeatingCo., 158 Ariz. 354, 762 P.2d 641 (App. 1988); Village ofRosemont v. Lentin Lumber Co., 144 Ill. App.3d 651, 98 Ill.Dec. 470, 494 N.E.2d 592 (1986); American Ins. Co. v. L.H. SowlesCo., 628 F.2d 967 (6th Cir. 1980); and J.F. Shea Co. v. HyndsPlumbing Heating Co., 96 Nev. 862, 619 P.2d 1207 (1980).
The waiver of subrogation clause prevents disruption and disputes among parties to a construction project and eliminates lengthy lawsuits. All parties are protected because all property damage is brought under the builder's risk policy.
In Tuxedo Plumbing Heating Co. v. Lie-Nielsen, 245 Ga. 27,262 S.E.2d 794 (1980), the Georgia Supreme Court reviewed the meaning and enforceability of contract provisions similar to those in this case. After a fire allegedly caused by the contractor's negligence, the owner argued that the insurance was meant to cover only the owner. The court disagreed, stating that the owner could not recover from the contractor. "[The waiver of subrogation clause] shifts the risk of loss to the insurance company regardless of which party is at fault."245 Ga. at 29, 262 S.E.2d at 794.
The parties to the instant suit expressly waived all rights against each other for damages caused by perils covered under the policy. We believe that it is clear that the parties intended to allocate property loss to IRI and to limit the recourse of JWA, the purchaser of the builder's risk policy, solely to the insurance proceeds from IRI. Thus, we hold that the trial court properly directed a verdict for defendant Seyforth Roofing Company.
With regard to defendant Garlock Equipment Company, we hold that Garlock is not an insured under IRI's builder's risk insurance policy. Garlock is not a named insured, nor is Garlock a subcontractor, sub-subcontractor, materialman, agent, or employee of the named insureds. Thus, Garlock was not entitled to a directed verdict, as was Seyforth, with regard to IRI's subrogation claims. Nonetheless, the jury returned a verdict in favor of Garlock. IRI appeals and maintains that the trial court instructed the jury erroneously with regard to its claims against Garlock. Garlock cross-appeals and claims that it was entitled to a directed verdict.
In its complaint, IRI alleged that Garlock had negligently and/or wantonly designed, manufactured, engineered, and sold a certain tar kettle that was being used at the time of the fire; that the tar kettle was defective and that its defective condition rendered it unreasonably dangerous; that Garlock negligently and/or wantonly failed to inform or warn the user of the dangerous condition of the tar kettle; and that the fire and resulting property damage was the proximate consequence of Garlock's negligence and/or wantonness.
Garlock asserted as affirmative defenses that the negligence of others contributed to and was the direct and proximate cause of the damage alleged by IRI; that the alleged damage was proximately caused and contributed to by the misuse and abuse of *Page 658 
the tar kettle; that IRI and its named insureds assumed the risk of such misuse and abuse; and that the alleged damage was proximately caused by an alteration or modification of the tar kettle.
IRI claims on appeal that the trial court gave to the jury a number of abstract instructions not based upon the evidence and, further, gave a confusing and erroneous instruction on the issue of whether the jury could impute the negligence of Seyforth or McDevitt Street to IRI. Garlock contends, that, regardless of whether this negligence should be imputed to IRI, IRI waived any objection to any allegedly erroneous jury instruction.
At trial, after giving a lengthy instruction to the jury, the trial judge asked counsel to place their objections on the record. Counsel for IRI objected as follows:
 "We would respectfully except to the court's charging the jury on the contributory negligence aspect of the case and the assumption of the risk charges. We think there's insufficient evidence to send this case to the jury with any charge of contributory negligence as against IRI and that referencing the contributory negligence of any of its agents or for anyone that was imputed to IRI is error and that the same is applicable to the assumption of risk charge. . . . We would also respectfully except to the court's charge of the jury that it's up to the jury to determine whether or not . . . Seyforth is insured under the insurance policy. Because we contend that they're not, of course, preserving that for my record."
These were IRI's only objections to the jury instructions. The trial court did not correct any of its instructions to the jury, and the jury returned a verdict for Garlock.
It is well recognized that the purpose for requiring a statement of the grounds for a party's objections or exceptions to an oral charge to the jury is to allow the trial court "an opportunity to correct the instructions and to avoid the waste of time and money from reversals resulting from oversight, technical omissions, or [remediable] mistakes." Nelms v. AlliedMills Co., 387 So.2d 152 (Ala. 1980) (quoting Feazell v.Campbell, 358 So.2d 1017, 1020 (Ala. 1978)). Therefore, a party waives any possible error as to the trial court's oral charge by failing to specifically object and state his grounds for objection. Campbell v. Employers Ins. Co. of Alabama,521 So.2d 924 (Ala. 1988).
While we agree with IRI and hold that its objections were sufficient to preserve any alleged error in the trial court's instructions regarding the imputation to IRI of contributory negligence or assumption of the risk, we also hold that the error alleged by IRI is harmless. Rule 45, Ala.R.App.P., states:
 "No judgment may be reversed or set aside, nor new trial granted . . . on the ground of misdirection of the jury, [or] the giving or refusal of special charges . . ., unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."
After a thorough reading of the record, including the trial court's instructions to the jury, we consider it clear that the error alleged by IRI was harmless. The party alleging error on appeal must not only establish error, but must also show that it was probably prejudiced by the error. Johnson v. Langley,495 So.2d 1061 (Ala. 1986). In this case, the trial court properly instructed the jury regarding both the Alabama Extended Manufacturer's Liability Doctrine and IRI's rights as a subrogee.
Although IRI claims that the trial court erred in stating that Seyforth's or McDevitt Street's negligence could be directly imputed to IRI, it is true that IRI had rights against Garlock only as a subrogee of its insureds. The trial court instructed the jury that for Garlock to be liable for a defect in the tar kettle, the defect must have existed at the time it left Garlock's control and must have proximately caused the damage claimed by IRI. We hold that that instruction was correct and sufficient *Page 659 
to overcome the alleged error claimed by IRI. A thorough reading of the record clearly reveals that the alleged error was harmless. We, therefore, hold that the trial court properly directed a verdict in favor of Seyforth and properly submitted to a jury IRI's claims against Garlock. The judgment of the trial court is due to be, and it hereby is, affirmed.
89-1079, AFFIRMED.
89-1115, AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON, KENNEDY and INGRAM, JJ., concur.