# STATE FARM MUTUAL AUTO INSURANCE COMPANY v. THOMAS SKLUZACEK AND ANOTHER.[1]

October 25, 1940.

No. 32,597.

[1]Reported in 294 N. W. 413.

*Moonan & Moonan,* for appellant.

*James O. Caulfield,* for respondent Thomas Skluzacek.

*Beldin H. Loftsgaarden,* for respondent Roger Sibell.

JULIUS J. OLSON, JUSTICE.

Plaintiff appeals from a judgment based upon findings by the court. Briefly these may be thus stated:

Plaintiff is engaged in the business of writing liability automobile insurance policies. It had issued such a policy to defendant Skluzacek. Under its terms it insured him against legal liability that might be imposed upon him for damages caused by accident arising out of the ownership, maintenance, and use of a Chevrolet pickup truck; and further that it would defend him in any suit brought against him even if such were groundless, false, or fraudulent. Defendant Sibell, a 16-year old boy, and several other boys, had been hired by Skluzacek to weed his 20-acre onion field, a part of his 160-acre farm in Dakota county. Their activities were limited to that job. Their hours of labor were from seven a. m. until noon and from one to six p. m. The onion field was located about a quarter of a mile from the farm home and was reached by a private road. At about 6:45 a. m. on June 13, 1939, these boys were taken to the immediate vicinity of the onion patch by riding on Skluzacek's insured truck. The same means of getting there and back to the farm home had been employed over a period of several days theretofore. After the boys had gotten off the truck at a point about 100 feet distant from the onion patch, Skluzacek backed the truck in such alleged negligent fashion as to come into contact with the Sibell boy, causing him injury.

Claim was made in the boy's behalf for damages for the injuries so suffered. Skluzacek duly notified plaintiff and demanded that it take in hand the defense of the action. It disclaimed liability; but, realizing that it might be mistaken in respect to its assured's cause under his policy,

brought this suit to secure a judicial determination of "the rights of the defendants and the obligations of the plaintiff under said policy of insurance, and adjudging" that the policy "does not afford coverage to the defendant Thomas Skluzacek for the accident which occurred on the 13th day of June, 1939; and that this plaintiff has no obligation under said policy to defend" him against any claim, lawsuits, causes of action, or demands arising out of that accident; also that plaintiff "is under no obligation to pay in whole or in part any judgment that may be recovered against" Skluzacek by Sibell.

The court found "that the riding on said truck" by Sibell "was gratuitous and permissive, a mere favor, and not in furtherance of" the employer's "business, nor did the riding become by implication part of the employment contract," and that "said employe owed his employer no duties except for the fieldwork in the onion field." It concluded that when Sibell received "said injuries, he was not an employe engaged in the business of the assured."

That portion of the policy upon which plaintiff relies to secure the relief wanted reads: "The company shall not be liable * * * for bodily injury to any employe of the assured while engaged in the business of the assured."

In its brief plaintiff succinctly states the determinative issue as follows: "The sole question * * * is whether * * * at the time he was injured Roger Sibell was an employe of the defendant Thomas Skluzacek and engaged in the business of the assured."

It is to be noted that while Sibell was an employe his hours of service had not commenced when the harm was done. He was on the farm for a special and limited purpose. Obviously he was not, as the term is commonly used, a "hired man" on this farm.

■ Our uniform declaratory judgments act was adopted in 1933 (L. 1933, c. 286, 3 Mason Minn. St. 1940 Supp. §§ 9455-1 to 9455-16). Under its provisions (§ 9455-1):

"Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." And (§ 9455-2): "Any person interested under a * * * written contract or other writings constituting a contract, * * * may have determined any question of construction or validity arising under the instrument." Such a "contract may be construed either before or after there has been a breach thereof." (§ 9455-3.) "When a proceeding under this Act involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending." (§ 9455-9.)

■ Our state was the eighteenth in point of time to adopt the uniform act. As pointed out by Professor Borchard in an excellent article in 18 Minn. L. Rev. 239, *et seq.*, "The bill proposing it had been pending in the Minnesota legislature for a number of years" before its final adoption. While the proceedings under this statute are new here, the fact is that fundamentally it is well grounded in the law, first, as "an alternative remedy," later, as "another equally serviceable remedy," and, finally, as "another established remedy." (Borchard, "The Uniform Declaratory Judgments Act," 18 Minn. L. Rev. 242-243, and cases cited under notes.) Organized society should assume "the function of limiting violence, promoting individual security, and maintaining a degree of social equilibrium." Borchard, Declaratory Judgments, p. 1. In Anderson, Declaratory Judgments, p. 1, it is spoken of as "an elastic instrumentality for the better administration of justice." Looking into its historic background this writer concludes that this remedy "is almost as old as the law itself, and, indeed, is older than the equitable system of jurisprudence." In Borchard's article (18 Minn. L. Rev. 243, 244, 246) it is

said that "declaratory actions * * * ought to be encouraged, for they manifest the important social function of deciding controversies at their inception—thus avoiding embittered relations and perhaps irretrievable losses—and enable a plaintiff to seek a mild rather than a drastic remedy with all its consequences." And, he concludes, "in the absence of some public reason," the plaintiff "should have a free choice of remedies," and that under it "only a 'new' procedural device or vehicle of relief was afforded." And, as we have seen, under § 9455-9 the right of jury trial in its appropriate sphere is safeguarded. Not to be forgotten is the fact that the declaratory judgment procedure was not part of the English common-law system adopted by the American Colonies. Nor was it known to the common law when Minnesota adopted its constitution. While declaratory judgments are said to have had "their analogue in the Roman law," and to have a record in Scotland of "several hundred years," the procedure was not adopted in England until 1852. 16 Am. Jur., Declaratory Judgments, § 2.

So, however deserved the encomium here and elsewhere for this creature of statute, it must be remembered that the constitution has not been amended thereby and the right of jury trial remains inviolate. It cannot be abrogated as to a mature cause of action as to which it exists, by the speedy ingenuity (of which no criticism is justified) of one party in resorting to an action for a declaratory judgment.

The point has not been made in this case; yet it seems proper to add this word of caution, repeating the idea expressed in Gilbertson v. Independent School Dist. No. 1, 208 Minn. 51, 54, 293 N. W. 129.

■ In the field of insurance the act has frequently been invoked, and, as might be expected, automobile policies have furnished their full quota. Many cases sustaining the applicability of the act to suits of this type are cited and discussed in Anderson, Declaratory Judgments, § 323.

Chapter 15 deals with actions respecting insurance generally, and under § 319 will be found citation of many cases dealing with practically all types of insurance. Borchard, Declaratory Judgments, c. VIII, p. 490, *et seq.* lucidly deals with the same subject matter. Enough has been said, we think, to demonstrate that the present suit was properly brought under the act and that the court had plenary jurisdiction to hear and determine the issues presented.

■ Going to the decisive issue in the case, whether the record sustains the trial court's finding that Sibell was not an employe of the assured nor engaged in his business at the time and place of accident, we find that there is competent evidence that the assured in going to the vicinity of the onion patch with his pickup truck did so for his own single and special purpose of hauling water and gasoline used in the operation of his tractor, the boys simply jumping onto the truck to get a ride, not an unusual thing for boys to do. His purpose in so using the truck was not, he testified, to take the boys to the onion field, although he did not object to their so riding on it. We conclude that the record as a whole sustains the trial court's findings. In reaching this conclusion we have not overlooked Johnson v. Aetna Cas. & Surety Co. (5 Cir.) 104 F. (2d) 22, 23, and the other cases of similar import cited by plaintiff. As will be noted in that case, what the court actually decided was that:

"The transportation to and from the mill was not expressly a term of the hiring of the hands, but had been afforded for several years, it was understood that they could ride if present when the truck started. We think the judge was warranted in concluding that the transportation was an implied term of the employment. The distance from the homes of the men to their work was so great that transportation must have been considered by both employer and employee."

449

Here we have but a short walk from the farmhouse to the onion field. Transportation by truck was not always had. On several days the boys walked back and forth. While it may be true that the court could have found in favor of plaintiff's contention, it cannot be said as a matter of law that the court was wrong in concluding as it did. There was at best an issue of fact for the trier of facts to determine. It is not for us to overturn them under such circumstances.

Judgment affirmed.

MR. CHIEF JUSTICE GALLAGHER took no part in the consideration or decision of this case.

