**Ione C. DRAKE, et al., Respondents,**

**v.**

**James Patrick RYAN, et al., Petitioners, Appellants.**

No. C1–92–1762.

Supreme Court of Minnesota.

April 8, 1994.

Rehearing Denied June 23, 1994.

R.D. Blanchard, Richard L. Pemberton, Jr., Joseph W.E. Schmitt, Meagher & Geer, Minneapolis, for appellants.

Richard H. Breen, Breen & Person, Ltd., Brainerd, for respondents.

## OPINION

WAHL, Justice.

This appeal will determine whether a defendant is entitled to dismissal of the claims against him in a negligence action where the plaintiffs have fully released the defendant and his primary liability insurer up to the limits of the primary liability coverage but have expressly retained the right to pursue their claims against the defendant for additional damages up to the limits of the defendant's excess liability insurance coverage. The district court denied appellant James Patrick Ryan's motion for summary judgment but certified the question of the validity of the release as important and doubtful. The court of appeals held the release valid, allowing the action to continue. We affirm the decision of the court of appeals.

Respondent Ione Drake was injured on December 21, 1988 when her car was rear-ended by a car driven by James Ryan and owned by his brother Richard Ryan. Dairyland Mutual Insurance Company insured Richard Ryan's car under a policy with liability limits of $30,000 per injury. James Ryan was an additional insured. James Ryan was also insured under his parents' State Farm Mutual Automobile Insurance Company policy. The State Farm policy had liability limits of $50,000 per injury and provided excess coverage when its insured was operating a non-owned automobile. The Dairyland policy was primary.

On June 28, 1990, Drake and her husband, Shannon Drake, filed a negligence action against James Ryan and Richard Ryan. As the primary insurer, Dairyland assumed responsibility for the Ryans' defense. Prior to trial, Dairyland offered to settle for $20,000 ($10,000 less than its policy limits) and notified State Farm that it intended to enter into a *Loy* release agreement with the Drakes patterned after the release in *Loy v. Bunderson,* 107 Wis.2d 400, 320 N.W.2d 175 (1982).

State Farm refused to enter settlement negotiations unless and until Dairyland agreed to pay its policy limits. Because Ione Drake's injuries prevented her continued employment, the Drakes faced foreclosure on their home and were under financial pressure to settle.

On July 29, 1991, the Drakes, the Ryans, and Dairyland finalized an agreement for release of insurer, satisfaction of future judgment, elimination of personal liability of defendants, and receipt of advance payment. The parties agreed to the following terms:

1. Dairyland hereby tenders $20,000.00 in satisfaction of $30,000.00 worth of the outstanding claim of plaintiffs against its insureds, defendant James Patrick Ryan and Richard Eugene Ryan.

2. Plaintiffs hereby accept the $20,-000.00 from Dairyland, and agree that the receipt of said $20,000.00 will operate as a partial satisfaction of any claim plaintiffs may have against defendants to the extent of the first $30,000.00 which may be adjudged against them, and further, that defendants will have no personal liability to plaintiffs and that the $20,000.00 payment will operate as a satisfaction of all claims against defendants in excess of the limit, if any, of the State Farm Insurance Policy
* * * *

3. The receipt of the $20,000.00 from Dairyland further shall operate as a release of all obligations of Dairyland under its policy of insurance, and in the event of any judgment which may be obtained by plaintiffs against defendants, $30,000.00 shall be credited against any such judgment for the alleged damages of plaintiffs.

4. Plaintiffs specifically reserve any and all claims which plaintiffs may have against defendants up to the limit of State Farm's policy, if any, and plaintiffs specifically agree that they will satisfy any judgment which they may recover against defendants in excess of $30,000.00, only out of the proceeds of the policy issued by State Farm, if any.

5. It is the intent of the parties that this agreement shall be governed and construed in accordance with the principles and rules established in the case of *Teigen*

*v. Jelco of Wisconsin, Inc.*, 124 Wis.2d 1, 367 N.W.2d 806 (1985) and *Loy v. Bunderson*, 107 Wis.2d 400, 320 N.W.2d 175 (1982).

6. Dairyland hereby acknowledges that it will provide reasonable notice to State Farm Insurance of the existence of this agreement.

7. Dairyland hereby acknowledges and agrees that it will not request repayment of this credit and/or advance payment ($20,000.00) from plaintiffs in the event that a future trial should determine that defendants are not liable to plaintiffs for damages.

8. It is the understanding of the parties to this agreement that the joint and several liability of the defendants identified in the civil action presently pending shall not be affected in any way, manner or form by this agreement.

9. The parties hereby acknowledge and agree that this document should *not* be construed as a Pierringer Release, and hereby acknowledge and agree that this document shall not have the legal effect of a Pierringer Release or a general release.

10. The parties hereby acknowledge and agree that if it is ultimately determined that this agreement may not be governed and construed in accordance with *Teigen, supra,* and *Loy, supra,* plaintiffs nonetheless forever forego any action of any kind arising out of the December 21, 1988, accident against Dairyland and against defendants, except to the extent of coverage provided to defendant James Patrick Ryan by State Farm Insurance.

The agreement did not address the issue of defendant James Ryan's negligence.

Following this settlement, State Farm assumed defense of the negligence claim. On January 27, 1992, James Ryan moved for summary judgment on the grounds that he was no longer a proper party to the lawsuit because the agreement had released him from all personal liability. On March 9, 1992, the plaintiffs stipulated to the dismissal with prejudice of their claims against Richard Ryan. On August 12, 1992, the district court denied James Ryan's motion for summary judgment and, pursuant to Minn.R.Civ.

App.P. 103.03(h), certified the following questions as important and doubtful:

> If the plaintiff fully releases a defendant tortfeasor and the tortfeasor's primary liability insurer up to the limits of the primary liability insurer's coverage, but plaintiff expressly retains the right to pursue a claim for additional damages from the tortfeasor's excess liability insurer:
>
> a. Is [the tortfeasor] entitled to a dismissal from this lawsuit because he has been released of all personal liability?
>
> b. Is the plaintiffs' attempt to reserve a claim against the tortfeasor's excess liability carrier, for damages exceeding the limits of the primary policy, pursuant to *Loy v. Bunderson,* 107 Wis.2d 400, 320 N.W.2d 175 (1982), enforceable in Minnesota?

The court of appeals determined that the agreement did not absolve James Ryan of all liability, but merely protected "his personal assets by limiting satisfaction of any judgment against him to the [State Farm policy] limits." *Drake v. Ryan,* 498 N.W.2d 29, 32 (Minn.App.1993). Based on this reasoning, the court held that James Ryan continued to be a proper party to the lawsuit and affirmed the trial court's denial of summary judgment. *Id.* at 33. The court further held that if the Drakes obtained a judgment against James Ryan in excess of $30,000, they could recover from State Farm up to the $50,000 policy limits. Additionally, the court found that public policy considerations favored the use of *Loy* releases in Minnesota. *Id.* We granted James Ryan's petition for further review.

We are asked whether, if the plaintiff fully releases a defendant tortfeasor and the tortfeasor's primary liability insurer up to the limits of the primary liability insurer's coverage but expressly retains the right to pursue a claim against the tortfeasor for additional damages from the tortfeasor's excess liability insurer, the defendant tortfeasor is entitled to dismissal from the lawsuit because he has been released of all personal liability.

■ Because insurance contracts in Minnesota are contracts of indemnity, the plaintiff must obtain a judgment against the

insured on the issue of liability in order to reach the excess liability insurer and the insurance proceeds. *Rinn v. Transit Casualty Co.*, 322 N.W.2d 357, 358 (Minn.1982). If the insured tortfeasor is dismissed from the action, the lawsuit fails. James Ryan, on behalf of his insurer State Farm, argues that he should be dismissed from the action because the agreement with plaintiffs fully released him from all personal liability thereby eliminating his status as a real party in interest and destroying the justiciable controversy between himself and the Drakes.

■ The first question is whether the agreement fully and finally releases James Ryan from all liability. We conclude that it does not. In several of the agreement's provisions, the plaintiffs specifically reserve their claims against James Ryan up to the limits of the State Farm policy. As the court of appeals recognized, in construing the agreement as a whole, it is evident that rather than fully releasing James Ryan, the agreement merely served "to protect his personal assets by limiting satisfaction of any judgment against him to the insurance coverage limits." *Drake*, 498 N.W.2d at 32.

James Ryan contends that it is not legally possible to "dissect" his liability. However, this court has recognized other types of releases that have dissected a defendant's liability, preserved part of a claim, and agreed to take a judgment only from an insurance policy rather than from a defendant's personal assets. In *Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982), we held that when an insurer unreasonably disputes coverage, the plaintiff and the insured tortfeasor may stipulate a settlement in plaintiff's favor and agree that the judgment will be taken from the insurance policy and not from the tortfeasor's personal assets. In *Shantz v. Richview, Inc.*, 311 N.W.2d 155, 156 (Minn.1981), we found that a *Pierringer* release permits a plaintiff to settle with one of two tortfeasors and reserve a claim against the tortfeasor who is not a party to the agreement. In *Naig v. Bloomington Sanitation*, 258 N.W.2d 891, 893–94 (Minn.1977), we allowed an employee to settle a tort claim for damages not recoverable under workers' compensation without affecting the employer's subrogation claim

against the tortfeasor for compensation benefits paid.

We find no merit in James Ryan's contention that he is entitled to dismissal from the lawsuit because he is no longer a real party in interest. In *Jostens, Inc. v. Mission Ins. Co.*, 387 N.W.2d 161 (Minn.1986), we held that an insured, who sues its primary and excess insurers for defense costs and then enters into a loan receipt agreement with its primary insurer, remains the real party in interest even though the insured was compensated under the agreement and the dispute was "primarily between the two insurers." *Id.* at 164–65. Applying the *Jostens* rationale to this case, we find that James Ryan continues to be a real party in interest, notwithstanding the fact that he, like the insured in *Jostens*, has no immediate financial incentive to defend against the plaintiffs' tort claim.

James Ryan has other reasons to contest the tort action. He has his driving record to protect and his insurance rates to consider. Thus he has a current, genuine interest in this litigation and remains a real party in interest. There also remains a justiciable controversy between the Drakes and James Ryan, despite Ryan's assertion to the contrary, because the question of his negligence has not been decided. We hold that the defendant is not entitled to dismissal from the lawsuit because the agreement did not fully and finally release him from all liability and because he remains a real party in interest in a justiciable controversy.

■ The certified question further asks whether the *Loy* release, pursuant to which the plaintiffs reserved a claim against defendant's excess liability carrier for damages exceeding the limits of the primary policy, is enforceable in Minnesota. In *Loy v. Bunderson*, 107 Wis.2d 400, 320 N.W.2d 175 (1982), the Wisconsin Supreme Court approved a release of the insured tortfeasor and his primary insurer, where upon payment of $20,000, release was given for policy limits of $50,000, leaving intact plaintiff's wrongful death cause of action against the "excess" insurer for any sums above $50,000 and within the $500,000 limits of the excess insurer's policy. The court held that the

release was absolute only for the liability below $50,000 and in excess of $500,000.

In *Loy,* the plaintiff could proceed directly against the excess insurer because of Wisconsin's direct action statute. In this case, the plaintiffs must obtain a judgment against the insured to reach the excess insurer because Minnesota does not have a direct action statute. But that is no obstacle where, as here, the defendant remains a real party in interest and where liability and damages are still to be ascertained. The absence of a direct action statute does not destroy the validity of a modified *Loy* settlement where the plaintiffs preserve part of their cause of action against the insured/tortfeasor.

James Ryan argues that the plaintiffs cannot proceed against State Farm until the limits of the primary policy are exhausted. We addressed that issue in *Schmidt v. Clothier,* 338 N.W.2d 256 (Minn.1983), where we recognized that "[e]nforcement of policy exhaustion clauses would * * * serve to force an insured to litigate the claim to final judgment in order to exhaust the policy claim limits." *Id.* at 260. Finding that the litigation expenses would decrease the insured's net recovery, delay payment, and unnecessarily burden the court system, we determined that "[w]here the best settlement available is less than the defendant's liability limits, the insured should not be forced to forego settlement and go to trial * * *." *Id.* Rather, the insured "has the right to accept what he or she considers the best settlement available." *Id.*

Furthermore, State Farm should not be concerned with the amount the plaintiffs received from Dairyland. The agreement provides that "in the event of any judgment which may be obtained by plaintiffs against defendants, $30,000.00 [the policy limits] shall be credited against any such judgment * * *." Thus, State Farm is not prejudiced because it is only being asked to fulfill its contractual obligations to its insured—to provide coverage in excess of that provided by the primary Dairyland policy.

James Ryan also asserts that if a primary insurer is permitted to settle for less than its policy limits, plaintiffs and the primary insurer will make "token settlements." This concern is not well-founded. When, as in this case, plaintiffs agree to "swallow the gap" between the amount of settlement and the primary policy limits, their own self-interest generally will prevent them from reaching a token settlement.

Finding no legal principle or reason which would constrain the use of *Loy* releases in Minnesota, we turn to public policy considerations. On behalf of State Farm, James Ryan argues that *Loy* releases increase the cost of excess insurance; give the settling parties the motive and opportunity to manipulate the civil justice system for their own personal gain; complicate, delay, and prolong litigation; and fail to narrow the scope of the dispute. The plaintiffs, on the other hand, maintain that *Loy* releases streamline litigation, encourage settlement, and promote judicial economy.

We leave for another day James Ryan's argument regarding "umbrella insurers" and the rising cost of excess insurance if primary carriers can so easily shift the cost of defense to excess insurers. State Farm is not an umbrella carrier. The State Farm policy involved is a standard automobile policy that provides primary coverage to its insured for driving certain vehicles and excess coverage when an insured is driving a non-owned insured vehicle. State Farm contracted to defend its insured and voluntarily accepted that defense when Dairyland withdrew after the settlement. As the *Loy* court said of the excess insurer in that case,

> Looking at Travelers' policy alone, it had the contractual duty to defend *ab initio* and to pay from 'dollar one.' The fact of the matter is that Travelers is not aggrieved. It is benefited by a fortuitous coincidence; and it clearly has the duty to continue with the defense for the potential liability reserved * * *.

320 N.W.2d at 185.

In addition to his other concerns, James Ryan asserts that *Loy* releases will complicate and delay litigation. For example, he argues *Loy* releases present difficult evidence issues concerning, for example, how much information jurors should have about the settlement. The plaintiffs correctly note

that since the existence or extent of a party's insurance coverage are never proper evidentiary facts for the jury to consider, the trial would proceed in the same manner as before the agreement. Only after a jury determines that a defendant was negligent and decides the amount of damages would the agreement become relevant in governing who pays how much of the judgment.

Finally, James Ryan argues that *Loy* settlements do not serve any useful purpose because they do not resolve any factual issues and fail to decrease the number of parties involved in the litigation. We see the matter differently. As a result of the agreement in this case Richard Ryan is no longer a party; Dairyland is no longer involved; James Ryan's assets, except for the insurance contract with State Farm, are no longer available for collection from a judgment; and bad faith exposure to State Farm is eliminated. *Drake,* 498 N.W.2d at 32–33. On balance, public policy considerations favor the enforcement of modified *Loy* releases in Minnesota. We hold that the defendant is not entitled to dismissal of the claims against him in a negligence action where the plaintiffs have fully released the defendant and his primary liability insurer up to the limits of the primary liability coverage but have expressly retained the right to pursue their claims against the defendant for additional damages up to the limits of the defendant's excess liability coverage. Thus, we answer the certified questions and affirm the decision of the court of appeals.

Certified Questions answered; affirmed.

COYNE, J., took no part in the consideration or decision of this case.