CINCINNATI INSURANCE COMPANY, Appellant,

v.

Francine FRANCK and Donald Franck, Respondents.

No. C0–00–1069.

Court of Appeals of Minnesota.

Jan. 2, 2001.

Peter C. Sandberg, Dunlap & Seeger, P.A., Rochester, MN, for appellant.

Paul R. Dahlberg, Meshbesher & Spence, Ltd., Rochester, MN, for respondents.

Considered and decided by LANSING, Presiding Judge, PETERSON and STONEBURNER, Judges.

## OPINION

LANSING, Judge

The core issue in this litigation is whether an umbrella-liability insurer has a duty to defend and indemnify its insured when the insured, the primary insurer, and the injured party settle the primary coverage for less than the policy limits. The district court ordered summary judgment against the umbrella insurer, declaring that it was obligated to provide excess coverage for the injured person's claims that exceeded the primary-coverage limit. Because the injured person has not obtained a judgment in excess of the primary coverage and neither the insured nor the primary insurer is a party to this action, the controversy is nonjusticiable and the judgment must be vacated.

## FACTS

Joyce Penniston was driving a car owned by her husband, John Penniston, when she struck and injured Francine Franck. At the time of the accident, the Pennistons' car was insured by AMICA Mutual Insurance Company with $500,000 in bodily-injury liability coverage and by Cincinnati Insurance Company under an umbrella-liability policy that provided an additional $3 million coverage.

By its written terms, the umbrella policy provided that Cincinnati would pay damages on behalf of the insured, Joyce Penniston, over and above the amount provided in the Pennistons' underlying primary policy. The umbrella policy also stated that Cincinnati would not pay for the costs of any defense that would otherwise be provided in the underlying primary policy, but reserved the right to defend at its option all or any part of a claim.

About one year after the accident, Francine Franck and her husband signed an agreement to settle the primary layer of insurance on the Penniston car for $425,000. This agreement provided that (a) the Francks would satisfy any future judgment against the Pennistons only out of the proceeds of the umbrella policy with Cincinnati Insurance Company, and (b) the $425,000 settlement represented satisfaction of the first $500,000 of the Francks' claims against the Pennistons. In other words, the Francks fully released AMICA, the Pennistons' primary insurer, and released the Pennistons up to the limits ($500,000) of their primary-liability coverage and from any liability not covered by insurance. The agreement stated that the parties intended the agreement and release to be governed and construed according to the principles established in *Drake v. Ryan*, 514 N.W.2d 785 (Minn.1994). The record indicates Cincinnati, the umbrella insurer, was not asked to participate in the settlement negotiations leading to this release, but, under the terms of the release, AMICA undertook to provide the

umbrella insurer with reasonable notice of the existence of the agreement.

Two weeks after the release was executed, the Francks contacted Cincinnati to discuss settling the claims against the Pennistons. Cincinnati declined to discuss settlement, contending that the umbrella coverage was not triggered because the underlying primary policy limits had not been exhausted, and the settlement voided coverage under the umbrella policy. Cincinnati then brought this declaratory-judgment action solely against the Francks, claiming that the settlement for less than the primary insurer's policy limit precluded coverage under the umbrella policy. Neither the insureds, Joyce and John Penniston, nor the primary carrier, AMICA, were named or joined as parties.

The umbrella carrier moved for summary judgment, claiming that coverage under the umbrella policy could not be reached until the primary limit had actually been paid. The Francks countered that the umbrella policy did not contain an exhaustion clause and that the *Drake* case approved such a settlement agreement. The district court granted summary judgment for the Francks, declaring that the umbrella insurer was obligated for coverage in excess of the primary insurer's bodily-injury-liability limit. This appeal followed.

### ISSUE

■ Does an umbrella insurer's declaratory-judgment action against an injured party present a justiciable controversy when neither its insured nor the primary insurer are parties to the action and the injured party has not obtained judgment in excess of the insured's primary coverage?

### ANALYSIS

■ The existence of a justiciable controversy is essential to a court's power to adjudicate. *Izaak Walton League of Am. Endowment, Inc. v. State, Dep't of Natural Resources*, 312 Minn. 587, 589, 252 N.W.2d 852, 854 (1977); *see also Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78, 110 S.Ct. 1249, 1253–54, 108 L.Ed.2d 400 (1990). If the parties to a declaratory action present no justiciable controversy, the court is without jurisdiction to declare rights. *St. Paul Area Chamber of Commerce v. Marzitelli*, 258 N.W.2d 585, 587 (Minn.1977). Because an underlying justiciable controversy is essential to a court's exercise of jurisdiction, the court may always raise the issue on its own motion. *Izaak Walton League*, 252 N.W.2d at 854; *Seiz v. Citizens Pure Ice Co.*, 207 Minn. 277, 281, 290 N.W. 802, 804 (1940). The existence of jurisdiction is a question of law, subject to de novo review. *Kellar v. Von Holtum*, 605 N.W.2d 696, 700 (Minn.2000).

■ A declaratory action is a justiciable controversy if it (a) involves definite and concrete assertions of right that emanate from a legal source, (b) involves a genuine conflict in tangible interests between parties with adverse interests, and (c) is capable of specific resolution by judgment rather than presenting hypothetical facts that would form an advisory opinion. *See State ex rel. Smith v. Haveland*, 223 Minn. 89, 92, 25 N.W.2d 474, 477 (1946); *Seiz*, 207 Minn. at 281, 290 N.W. at 804; *Graham v. Crow Wing County Bd. of Comm'rs*, 515 N.W.2d 81, 84 (Minn.App.1994), *review denied* (Minn. June 2, 1994).

■ The Minnesota Declaratory Judgment Act gives courts the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Minn.Stat. § 555.01 (1998). Declaratory relief is a unique statutory remedy that serves an "important social function of deciding controversies at their inception." *State Farm Mut. Auto. Ins. Co. v. Skluzacek*, 208 Minn. 443, 446–47, 294 N.W. 413, 415 (1940) (citations omitted). Declaratory judgments permit determination of a controversy "before obligations are repudiated or rights are violated," essentially allowing one who walks in the dark to turn on the light before—

rather than after—one steps in a hole. *A.L. Loyd v. City of Irwinton*, 142 Ga.App. 626, 236 S.E.2d 889, 890 (1977).

As a procedural device, a declaratory action allows for earlier adjudication of a justiciable controversy, but it does not dispense with the necessary elements of justiciability. *See Seiz*, 207 Minn. at 281–82, 290 N.W. at 804–05; *see also Skluzacek*, 208 Minn. at 446–47, 294 N.W. at 415 (describing history and purpose of Uniform Declaratory Judgment Act and its adoption in Minnesota). Because the judicial function does not comprehend the giving of advisory opinions, justiciability is necessary in all adjudications. *Izaak Walton League*, 252 N.W.2d at 854; *County Bd. of Educ. v. Borgen*, 192 Minn. 512, 517, 257 N.W. 92, 94 (1934) (citation omitted).

In bringing this declaratory-judgment action, the umbrella insurer sued only Francine Franck and Franck's husband. The umbrella insurer did not include in this action its own policyholders or the primary insurer. On the facts of this case, an action against only the injured party at this stage of the proceedings does not present a justiciable controversy and deprives the court of jurisdiction to enter a declaratory judgment.

First, Cincinnati's failure to include its own policyholders defeats the requirement that a controversy involve a concrete assertion of legal rights between adverse parties. Minnesota does not have a direct-action statute that allows an injured plaintiff to proceed directly against an insurer. *Drake*, 514 N.W.2d at 789; *Anderson v. St. Paul Fire & Marine Ins. Co.*, 414 N.W.2d 575, 576 (Minn. App.1987) (outlining history of Minnesota's common-law rule against direct actions). An umbrella insurer's duty to defend and indemnify stems directly from a contractual relationship between the insured and the insurer. Thus, even when a settlement purports to eliminate the financial incentive for an insured to defend against the injured party's tort claim, the insured continues to be the real party in interest. *Jostens Inc. v. Mission Ins. Co.*, 387 N.W.2d 161, 164 (Minn.1986); *Anderson*, 414 N.W.2d at 576. The Francks could not proceed directly and solely against the Pennistons' insurer without a judgment against the insureds. *See Drake*, 514 N.W.2d at 789. The obverse is true as well: an insurer cannot bring an anticipatory declaratory-judgment action only against the injured party. *Constitution Assoc. v. New Hampshire Ins. Co.*, 930 P.2d 556, 562 (Colo. 1996). As the *Drake* court observed, "[b]ecause insurance contracts in Minnesota are contracts of indemnity, * * * [if] an insured tortfeasor is not part of the action to enforce the policy, the lawsuit fails." 514 N.W.2d at 787–88.

Courts in other jurisdictions have similarly concluded that to declare whether an insurer has the duty to defend and indemnify the insured, the insured must be a party to an action. *See, e.g., Travelers Indem. Co. v. Standard Accident Ins. Co.*, 329 F.2d 329, 331 (7th Cir.1964) (declaratory judgment not proper when one insurer sought declaration against another insurer that it had no duty to defend insured, but insured was not party to action); *Farmers Ins. Co. v. Lotches*, 276 Or. 81, 554 P.2d 169, 171 (1976) (declaratory action to determine whether auto liability insurer had duty to defend properly terminated when insured was not made party to proceeding).

In addition to the insured, the primary insurer may also be essential to the litigation. The absence of the primary insurer may prevent a final determination of the parties' rights. The Minnesota Declaratory Judgment Act provides that all persons potentially affected by a declaratory action must be made parties to the action:

> When declaratory relief is sought, *all persons shall be made parties* who have or claim any interest which would be affected by the declaration, and no dec-

laration shall prejudice the rights of persons not parties to the proceeding.

Minn.Stat. § 555.11 (1998) (emphasis added). The joining of all necessary parties allows an efficient and final termination of the controversy. *See* Minn.Stat. § 555.06 (1998) (court may refuse to enter a declaratory judgment when judgment would not terminate the uncertainty or controversy). Because the declaration cannot bind absent parties, the failure to join necessary parties leaves their rights undetermined.

The primary right to be declared in this litigation is whether an umbrella carrier—with no contractual duty to defend its insured—has a duty to defend and indemnify its insured when the insured, the primary carrier, and the injured party have settled the primary layer of insurance coverage for less than the policy limits. To decide this case on the merits, the court must balance the rights of the injured party, the insured tortfeasor, the primary insurer, and the umbrella insurer. Proper resolution would require consideration of the contractual and policy reasons for extending or not extending the holding and rationale of the *Drake* case to umbrella carriers. A full resolution would require addressing (1) whether an umbrella insurer must assume the duty to defend when it has no contractual obligation to defend, (2) whether the primary insurer can be relieved of its duty to defend when it has not paid its full policy limits even though it has no remaining interest in the outcome of the underlying lawsuit, (3) whether the umbrella carrier can recover the costs of defense from the primary carrier and/or the insured if it assumes the duty to defend without a contractual obligation to do so, and (4) whether the umbrella carrier must be given notice before the settlement occurs or be given an opportunity to participate in the settlement. *See generally* Michael M. Marick, *Excess Insurance: An Overview of General Principles and Current Issues*, 24 Tort & Ins. L.J. 715, 716–19, 721–22, 725–26, 729–30 (1989) (discussing the interplay between primary, excess, and umbrella policies). Because a resolution on the merits would be significantly hampered by the absence of the primary insurer, the court's power to declare rights and terminate the controversy is compromised.

Whether the failure to add the primary insurer as a party would affect justiciability and therefore jurisdiction depends on the nature of the rights sought to be declared. Cincinnati's complaint that the release destroyed its liability suggests issues of bad-faith settlement that may well implicate the primary insurer. *See Continental Cas. Co. v. Reserve Ins. Co.*, 307 Minn. 5, 8, 238 N.W.2d 862, 865 (1976) (holding that excess insurer was subrogated to insured's rights against a primary insurer because of breach of primary insurer's good-faith duty to settle).

Minnesota courts have not consistently assigned the same jurisdictional consequences to the failure to add necessary parties as they have to the failure to include an insurance policyholder. In some circumstances, the absence of necessary parties has deprived the district court of jurisdiction to consider and declare rights. *See, e.g., Frisk v. Board of Education of City of Duluth*, 246 Minn. 366, 382, 75 N.W.2d 504, 514 (1956) (in declaratory judgment action, court had no jurisdiction to consider teachers' rights to retirement benefits when organization that administered those retirement benefits was not party to proceeding); *see also Minneapolis–St. Paul Sanitary Dist. v. City of St. Paul*, 231 Minn. 379, 382–83, 43 N.W.2d 219, 221 (1950) (party who has an interest affected by the outcome is a "necessary party" to declaratory action). Other Minnesota cases have addressed the issue as one of due process rather than jurisdiction. *See, e.g., Doerr v. Warner*, 247 Minn. 98, 103–04, 76 N.W.2d 505, 511 (1956) (footnote omitted); *see also State Auto. & Cas. Underwriters v. Lee*, 257 N.W.2d 573, 576 (Minn.1977) (declaratory judgment entered and satisfied not void as to parties

included in action even when indispensable party not joined).

Depending on the scope of the umbrella insurer's requested relief, the primary insurer may or may not be a necessary party to the declaratory-judgment action. But to the extent that the umbrella insurer argues that any remaining obligation to indemnify cannot include an obligation to assume the primary insurer's duty to defend, the rights of the primary insurer are at issue, and full resolution requires the primary insurer's presence in the action. *See Continental Cas.*, 307 Minn. at 10 n. 6, 238 N.W.2d at 865 n. 6 (drawing analogy to law of contribution and indemnity in discussing remedies when duty foisted on excess insurer not provided for in insurance contract or rate structure).

### DECISION

The umbrella insurer's declaratory-judgment action against the injured party did not present a justiciable controversy because neither the insureds nor the primary insurer were parties to the declaratory action and the injured party has not obtained a judgment against the insureds in excess of the primary coverage.

**Judgment vacated.**