**INDEPENDENT SCHOOL DISTRICT 833, Respondent,**

v.

**BOR–SON CONSTRUCTION, INC., Appellant,**

v.

**A. Kamish & Sons, Inc., Central Roofing Company and Spancrete Midwest, Third-party Defendants.**

**No. C2–01–77.**

Court of Appeals of Minnesota.

July 24, 2001.

Shamus P. O'Meara, Dale O. Thornsjo, Johnson & Condon, P.A., Minneapolis, MN, (for respondent).

John M. Anderson, Kelly A. Putney, Bassford Lockhart Truesdell & Briggs, P.A., Minneapolis, MN, (for appellant).

Considered and decided by WILLIS, Presiding Judge, HALBROOKS, Judge, and HANSON, Judge.

## OPINION

HALBROOKS, Judge

This is a subrogation action brought by the Minnesota School Board Association Insurance Trust (MSBAIT) in the name of respondent Independent School District 833 (ISD 833). ISD 833 sustained property damage resulting from a roofing project. MSBAIT seeks to recover its costs incurred as ISD 833's insurer for repairs to three elementary schools that were damaged by appellant Bor–Son Construction. The district court ruled that the subrogation-waiver provision did not apply to ISD 833's claim for damage to "non-work" property, and Bor–Son challenges the court's interpretation of the waiver provision. Because the district court erred in its interpretation of the provision, we reverse.

## FACTS

On February 23, 1995, ISD 833 contracted with Bor–Son to repair the roofs of three elementary schools. The contract used was a standard contract designed by the American Institute of Architects (AIA). The terms of the contract required ISD 833 to maintain property insurance and to obtain liability insurance for damages "other than to the [w]ork itself." The contract also contained a waiver-of-subrogation clause that barred any claims based on Bor–Son's "work." The term "work" was defined as "the construction and services * * * and includes all other labor, materials, equipment and services provided or to be provided by the Contractor * * *."

ISD 833 had pre-existing property insurance through MSBAIT that covered the school buildings and their contents. To fulfill its obligation under the contract, ISD 833 purchased a "builder's risk" endorsement as a supplement to its insurance policy that specifically provided Bor–Son with additional property insurance for the three roofing projects. ISD 833 did not procure any other additional insurance.

Construction began in the summer of 1995. Bor–Son used a temporary water-protection system, which used reinforced polyethylene and a ballast, to protect the interior. But due to heavier-than-anticipated rainfall in June and July, water seeped into the buildings. The parties dispute whether there were adequate precautions taken to prevent water penetration and whether Bor–Son was urged to take greater precautions. Bor–Son completed the roofing projects by the start of the school year and received a notice of substantial completion from the school district's architect.

The water damaged the schools' interiors and equipment and led to mold growth, causing $775,086.01 in damages. Ninety percent of these damages were covered by MSBAIT, which subsequently brought this subrogation action against Bor–Son.

Both parties made a motion for partial summary judgment on the issue of the subrogation-waiver clause. ISD 833 argued that the waiver did not apply because the damage to the buildings was on the inside rather than the roofs and, consequently, it was not work-related. Bor–Son argued that ISD 833 waived its subrogation right or, in the alternative, that the damage to the interior of the buildings was work-related.

The district court granted ISD 833's motion and denied Bor–Son's motion. The court held that the waiver of the subrogation rights contained in Articles 11.3.5 and 11.3.7 of the contract was limited to claims for damage to the "work." Because the water damage to the building interiors and subsequent mold growth were not work-related, the district court concluded that the subrogation waiver was inapplicable.

In June 1998, in a case of first impression, the Minnesota Supreme Court interpreted the subrogation-waiver clause in the standard AIA contract. *Employers Mut. Cas. Co. v. A.C.C.T.*, 580 N.W.2d 490 (Minn.1998). The supreme court held that an owner agreed to waive the right to make a claim for damages done only to the "work" if the owner purchases a separate all-risk policy specifically to cover that risk. *Id.* at 493.

> But if the owner relies on an existing policy which is so broad that it covers both "work" and "nonwork" property, it waives the right to sue for all damages done as long as that damage is covered by the policy.

*Id.*

In light of *A.C.C.T.*, Bor–Son moved for reconsideration of the district court's rulings on partial summary-judgment motions. The district court denied the motion, finding *A.C.C.T.* to be distinguishable. In an effort to avoid trial, Bor–Son confessed judgment against it for $791,252.63, but reserved its right to appeal the district court's interpretation of the subrogation waiver. This appeal follows.

### ISSUE

Did the district court err in its interpretation of the subrogation-waiver clause in the insurance policy?

### ANALYSIS

■ We begin by first addressing ISD 833's argument that this appeal cannot be heard. Because Bor–Son agreed to a confessed judgment, ISD 833 argues that Bor–Son "has admitted liability on virtually all of the non-intentional claims," including negligence, breach of contract, breach of warranties, and negligent misrepresentation. Given this admission of liability, ISD 833 characterizes Bor–Son's request on appeal as seeking an advisory opinion. Further, ISD 833 argues that Bor–Son is estopped from bringing this appeal by agreeing to the settlement.

We disagree. First, ISD 833 mischaracterizes Bor–Son's claim. We are presented with a justiciable controversy. *See Cincinnati Ins. Co. v. Franck,* 621 N.W.2d 270, 274 (Minn.App.2001) ("Because the judicial function does not comprehend the giving of advisory opinions, justiciability is necessary in all adjudications." (citations omitted)). Bor–Son's claim is justiciable because it involves a definite, concrete assertion of a right emanating from the parties' contract; it stems from a genuine conflict between parties with adverse interests; and it is capable of specific resolution by judgment. *Id.*

Second, Bor–Son explicitly reserved the right to appeal and, therefore, is not estopped by the settlement. The plain language of the settlement clearly indicates that it "is intended to preserve [Bor–Son's] right to seek reversal" of the district court's partial summary-judgment decision. *See S O Designs USA, Inc. v. Rollerblade, Inc.,* 620 N.W.2d 48, 53 (Minn. App.2000) (stating that an unambiguous contract must be construed to "give effect to the intention of the parties as expressed in the language they used" (quotation omitted)), *review denied* (Minn. Feb. 21, 2001). It is illogical to say that the same settlement that explicitly reserved Bor–Son's right to appeal also prohibits Bor–Son from exercising that right. Respondent's motion to dismiss the appeal is, therefore, denied, as is appellant's motion to strike respondent's motion.

■ Finding that Bor–Son may properly seek review from this court, we turn to the substantive question of whether a subrogee waives the subrogor's right to sue by purchasing a builder's endorsement. We start by applying the supreme court's rulings in *A.C.C.T.,* interpreting duty-to-insure provisions. *Employers Mut. Cas. Co. v. A.C.C.T.,* 580 N.W.2d 490, 493 (Minn.1998). The issue before the su-

preme court was whether the standard AIA-waiver clause barred the owner's insurer from bringing a subrogation claim against a contractor for negligently-caused damages. *Id.* at 491. In *A.C.C.T.,* a medical center entered into a standard AIA contract with A.C.C.T. to remove asbestos. *Id.* The medical center relied on its existing property-insurance policy to fulfill its obligations under the AIA contract. *Id.* at 492. After a fire that started in the area where A.C.C.T. was working resulted in damage to both the "work" and "nonwork" areas, the medical center recovered its losses from its insurer, Employers Mutual Casualty Company. *Id.* The insurer, in turn, brought a subrogation claim, alleging A.C.C.T. was negligent and had breached its contract. *Id.* A.C.C.T. responded that under the contract, "both parties agreed to waive all rights against the other for damages to the extent that those damages are covered by property insurance." *Id.*

The supreme court agreed and reversed this court's affirmance of the trial court's denial of summary judgment to A.C.C.T. The supreme court held that the waiver's distinction between "work" and "nonwork" was "based upon the owner's decision to purchase a new policy or to rely on an existing one." *Id.* at 493. If an owner purchased an all-risk policy that "was specifically to cover the 'work' " and that was separate from any existing property-insurance policy, then the owner only waived the right to sue for damages arising from the "work." *Id.* The owner retained its subrogation right to sue for damage to "nonwork" property. But if an owner decided to rely on its existing property insurance, then "it waives the right to sue for all damages done as long as that damage is covered by the policy." *Id.*

■ A builder's endorsement, such as exists in this case, does not fall squarely within the *A.C.C.T.* holding. The endorse-

ment represents the owner's intent to insure something not covered by the existing policy. But an endorsement is "[a]n amendment to an insurance policy." Black's Law Dictionary 548 (7th ed.1999). We have construed an endorsement to be part of an existing contract, not a separate and independent document. *National Indem. Co. v. Ness,* 457 N.W.2d 755, 759 (Minn.App.1990), *review · denied* (Minn. Sept. 14, 1990).

█ Although the owner is purchasing additional coverage by buying an endorsement, the endorsement becomes part of the existing policy. *Id.* Because the endorsement cannot "stand" on its own, the owner fulfills its contractual duty to provide insurance on the basis of its pre-existing all-purpose policy. ISD 833 did not purchase a separate policy that clearly delineated between "work" and "nonwork." The underlying policy, supplemented by the endorsement, covers both "work" and "nonwork" property. As a result, ISD 833 waived its subrogation right to sue for covered damages.

This holding is consistent with *Lloyd's Underwriters v. Craig & Rush, Inc.,* 26 Cal.App.4th 1194, 32 Cal.Rptr.2d 144 (1994), a case that the supreme court found persuasive. *See A.C.C.T.,* 580 N.W.2d at 494. In *Lloyd's Underwriters,* the California Court of Appeals noted that it might have come to a different conclusion had the owner purchased a separate policy that was specifically limited to damages arising from work property. 32 Cal. Rptr.2d at 146 n. 4. Although dictum, the court added that the owner's policy either "by virtue of an exclusion or for other reasons" must be specifically applicable only to work-related damages. *Id.*

Reviewing respondent's endorsement, we find no language that limits this endorsement to only work-related damages. Rather, the endorsement specifically is "[a]ttached to and forming a part of" the original policy. Under the standard AIA contract, if an owner wants to preserve subrogation rights to sue for damage to "nonwork" property, the owner must purchase a *separate* policy, not supplement an existing one. *A.C.C.T.,* 580 N.W.2d at 493.

### DECISION

Both respondent's motion to dismiss the appeal and appellant's motion to strike respondent's motion are denied. The district court erred in granting partial summary judgment in favor of ISD 833. Because ISD 833 did not purchase a separate insurance policy, its subrogation right under the AIA contract was waived.

**Reversed; motions denied.**

HANSON, Judge (dissenting)

I respectfully dissent. I would affirm the district court's conclusion that the "Waivers of Subrogation" clause applies only to claims brought under the Builder's Risk Endorsement, covering loss to the Work, and does not preclude ISD 833's subrogation claim brought under the pre-existing property coverage for damages to non-Work portions of the school property.

This dispute reduces itself to conflict between the contractor's liability insurance, covering Bor–Son's performance of the Work, and the owner's pre-existing property insurance, covering ISD 833's non-Work property. Since Bor–Son has admitted its liability for negligence, it seems clear that both coverages are implicated, and the question becomes which should be the ultimate source for payment of the damage to non-Work property. That question is determined by the parties construction contract, which allocates the parties' respective risks and insurance obligations and defines the scope of the Waivers of Subrogation clause.

For context, it is important to note that Bor–Son agreed that it would be liable to indemnify ISD 833 for any damage to non-Work property resulting from its negligence in performing the Work. The construction contract required Bor–Son to obtain liability insurance in order to provide ISD 833 with security for that potential liability. Bor–Son has admitted its liability and ISD 833 now looks to Bor–Son's liability insurer for payment.

The construction contract also required ISD 833 to obtain insurance, but with a narrow scope. Section 11.3.1 only required ISD 833 to purchase property insurance that insured the interest of both parties in the Work at the site. Thus, the construction contract required Bor–Son to provide liability insurance to cover the risk that Bor–Son would damage ISD 833's non-Work property, while it required ISD 833 to provide property insurance for damage to both parties' interest in the Work.

It is noteworthy that the construction contract further provided that if ISD 833 did not obtain the required property insurance for the Work, Bor–Son could obtain it and charge the cost back to ISD 833 by a change order. ISD 833, however, did obtain the specific coverage required by Section 11.3.1. While ISD 833 already had general property coverage under MSBAIT's self-insured property plan, it did not rely upon that coverage to satisfy its obligation under Section 11.3.1. Instead, it obtained, at an additional cost, a Builder's Risk Endorsement that specifically covered the Work, identified each of the three school roof projects and added Bor–Son as an "additional plan participant."

Without going any further, it would seem logical to conclude that, because the damage was to the non-Work portions of ISD 833's property, the allocation of risks and insuring obligations made in the construction contract would dictate that the liability insurance obtained by Bor–Son would pay the loss. Such a conclusion seems to be necessary to give effect to Bor–Son's obligation under the construction contract to obtain liability insurance for "claims for damages, other than to the Work itself * * *." Further, it would seem inappropriate to apply the waiver of subrogation to ISD 833's pre-existing coverage for property in which Bor–Son had no insurable interest.

The question then becomes whether the parties intended to modify the seemingly clear allocation of risks and insuring obligations by the Waivers of Subrogation clause. That clause contains a waiver by ISD 833 of all rights against Bor–Son for damages "to the extent covered by property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work * * *." Bor–Son argues, and the majority opinion apparently agrees, that this language constitutes a waiver of subrogation by ISD 833, not only for claims under the Builder's Risk Endorsement for damages to the Work, but also for claims under ISD 833's pre-existing property coverage for damages to non-Work. Bor–Son and the majority opinion read *Employers Mutual Casualty Co. v. A.C.C.T., Inc.*, to require this result. *See Emps. Mut. Cas. Co. v. A.C.C.T.*, 580 N.W.2d 490 (Minn.1998) (interpreting the subrogation waivers of subrogation clause in the standard AIA contract). I would apply *A.C.C.T* differently.

It is true that *A.C.C.T.* ruled that the determinative issue is not whether the damage was to the Work or non-Work, but is "the owner's decision to purchase a new policy or to rely upon an existing one" *Id.* at 493. However, I conclude that ISD 833 did purchase "a new policy" within the meaning and intent of *A.C.C.T.* I do not think the supreme court intended to create

an artificial distinction between owners who satisfy their insurance obligations by purchasing stand-alone coverage for the Work and those who satisfy it by purchasing additional coverage for the Work from their existing property insurer under a Builder's Risk Endorsement. ISD 833 did not rely on its existing coverage, but purchased new, added coverage specifically to satisfy its obligation under the construction contract.

It is, of course, logical that ISD 833 obtained that insurance from the same source. As a school district, ISD 833 is a member of the Minnesota School Boards Association Insurance Trust (MSBAIT), which provides a pooled self-insurance plan. A member's insured losses are funded by all member school districts. It seems meaningless to require that, if ISD 833 wished to limit its waiver of subrogation to the additional insurance it was obligated to purchase under the construction contract, it must obtain the additional insurance from another source, or in a different form (i.e. as a separate policy rather than as an endorsement).

I read *A.C.C.T.* to require only that an owner who wishes to limit its waiver must purchase additional coverage that applies only to the Work and names the contractor as an additional insured. Both the owner and the contractor have an insurable interest in the Work until completion.

ISD 833 has supplied copies of two district court decisions involving the purchase by other school districts of similar Builder's Risk Endorsements to the MSBAIT plan to satisfy their construction insurance obligations. In both cases the court held that these Endorsements should be treated as separate policies under *A.C.C.T. See ISD 701 v. H.G. Harvey Constrs.*, No. 69–C7–98–301098 (St. Louis County Dist. Ct. March 17, 1999) and *ISD 2125 v. Winona Heating and Ventilating Co.*, No. 20–C6–99–000057 (Dodge County District Court March 20, 2000). Each of these decisions concluded that, because the school district did not rely on existing property coverage, but took affirmative steps to acquire and pay for coverage specific to the Work, the waiver of subrogation clause applied only to the Builder's Risk Endorsement coverage, and subrogation claims could be pursued for claims paid under the pre-existing property coverage.

As noted earlier, the construction contract provided that if ISD 833 did not purchase the insurance for the Work required by Section 11.3.1, Bor–Son could do so and charge the cost to ISD 833. Had Bor–Son done so, this additional coverage would clearly limit the waiver of subrogation to claims paid under the policy purchased by Bor–Son. However, Bor–Son was apparently satisfied that the Builder's Risk Endorsement fulfilled ISD 833's obligation under Section 11.3.1. It seems odd to now penalize ISD 833 for having purchased the additional coverage.

I would affirm the district court's decision that the waiver of subrogation clause does not apply to claims paid under ISD 833's pre-existing property coverage for damage to non-Work, but only applied to claims paid under the Builder's Risk Endorsement, which is "the property insurance obtained pursuant to this Paragraph 11.3 * * * applicable to the Work." It seems incongruous to me to require member school districts to pay for property damage admittedly caused by Bor–Son's negligence, when Bor–Son was contractually obligated to insure its liability for that damage.